United States District Court
Southern District of Texas
FILED

JAN 2 9 2004

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PAUL N. HERRERA | * | |
| | * | |
| VS. | * | CIVIL ACTION NO. B-03-019 |
| | * | |
| CACTUS DRILLING COMPANY and | * | |
| UNIT CORPORATION | * | |

## JOINT PRETRIAL ORDER

TO THE HONORABLE JUDGE OF SAID COURT.

COME NOW, Plaintiff, PAUL N. HERRERA, and Defendants, CACTUS

DRILLING CORPORATION and UNIT CORPORATION[1] and file this their Joint

Pretrial Order.

1.    **APPEARANCE OF COUNSEL**

Plaintiff
Barry R. Benton
Law Office of Barry R. Benton
284 Ebony Avenue
Brownsville, Texas 78520

---

[1]     Defendants maintain that Unit Drilling Corporation is improperly named as a defendant in this action.  The stock of Cactus Drilling Company was sold to Unit Corporation in August 2002, in a transaction in which (a) Cactus Drilling Company continued in existence (immediately prior to the sale the name of Cactus Drilling Company was changed to CDC Drilling Company) and (b) Cactus Drilling Company was indemnified by the seller against all liabilities except certain specifically enumerated drilling contracts. The indemnified liabilities include the claims asserted by Mr. Herrera in this lawsuit.  Plaintiff's counsel, Barry Benton, has been advised both generally and specifically of this information.

(956) 546-9900
(956) 546-9997 FAX

<u>Defendant</u>
Deirdre O. Dexter, Attorney in Charge
Oklahoma Bar No. 10780
Frederic Dorwart, Associated Counsel
Oklahoma Bar No. 2436
J. Michael Medina, Associated Counsel Oklahoma
Bar No. 6113
124 East Fourth Street
Old City Hall
Tulsa, Oklahoma 74103
(918) 583-9922
(918) 584-2729 FAX

and

Tom M. Kirkendall, Associated Counsel
State Bar No. 11517300
S.D. Tex Bar No. 02287
65 Hollymead Drive
The Woodlands, TX
(281.) 364-9946
(888) 582-0646 FAX

## 2.    STATEMENT OF THE CASE

This case involves discrimination claims brought by the Plaintiff, Paul Herrera,

a Native American against the Defendant, Cactus Drilling Company under the Texas

Commission on Human Rights Act.

Mr. Herrera has asserted four claims against Cactus Drilling Company: (I) race discrimination; (ii) hostile work environment; (iii.) retaliation; and (iv) constructive discharge.

Defendants deny that Mr. Herrera was discriminated against because he is Native American and deny that Mr. Herrera was subjected to a hostile work environment, retaliation or that he was constructively discharged. Defendants state that Cactus Drilling Company had a procedure in place for reporting incidents such as those alleged by Plaintiff and that when Plaintiff complained, Cactus took prompt remedial action. For other instances when Plaintiff did not complain, Defendants assert that Plaintiff failed to take advantage of the Cactus preventative or corrective procedures.

3.    **JURISDICTION**

This Court has jurisdiction of this case under the provisions of 28 U.S.C. §§1332 and 1441. Plaintiff and Defendants are residents of different states and the amount in controversy exceeds $75,000.

4.    **MOTIONS**

Plaintiff anticipates filing a motion in limine.

Defendants' Motion for Summary Judgment is currently pending. Defendants are also filing a motion in limine with the Court.

## 5. CONTENTIONS OF THE PARTIES

### A. Plaintiff's Contentions:

1. Plaintiff's race as an American Indian was a motivating factor in Defendants' failure to promote him to the position of tool pusher.

2. Plaintiff was subject to a hostile work environment on account of his race.

3. Defendant retaliated against Plaintiff on account of his filing a charge of discrimination with the Equal Employment Opportunity Commission.

4. Race was a motiving factor in Defendant discontinuing using Plaintiff as an independent contractor to do welding work.

5. Defendants' investigation of Plaintiff's complaints was a sham in that the person responsible for the investigation failed to investigate the relevant facts and to recommend proper, remedial measures.

6. As a result of Defendants' wrongful conduct Plaintiff has suffered severe, mental anguish.

7. As a result of Defendants' wrongful conduct Plaintiff has lost earnings in the past.

8. As a result of Defendants' wrongful conduct Plaintiff will continue to lose earnings into the future.

9.    Plaintiff's supervisors acted with malice or reckless indifference to Plaintiff's protected rights which warrants recovery by Plaintiff of punitive damages from Defendants.

10.   Plaintiff is entitled to reasonable and necessary attorney's fees which are calculated based upon the "Lodestar" method of determining reasonable attorney's fees.

**B.    Defendants' Contentions:**

1.    Plaintiff Paul Herrera was not discriminated against on account of his race.

2.    Plaintiff Paul Herrera was not subjected to a hostile work environment on account of his race.

3.    Plaintiff Paul Herrera was not retaliated against on account of his filing a charge of discrimination.

4.    Plaintiff Paul Herrera was not constructively discharged.

5.    Plaintiff was not denied a promotion on account of his race.

6.    Plaintiff Paul Herrera was not denied welding opportunities on account off his race.

7.    Cactus Drilling Company had legitimate, non-discriminatory reasons for its decision to stop using Plaintiff as an independent contractor for welding services.

8.    Allowing Plaintiff to work for Cactus Drilling Company as both an employee-driller and independent contractor-welder was a conflict of interest.

9.    No other Cactus Drilling Company employees were allowed to work as employees of the company while at the same time working as independent contractors for the company.

10.   Cactus Drilling Company had legitimate, non-discriminatory reasons for not promoting Plaintiff to tool pusher.

11.   Plaintiff is precluded from presenting evidence regarding any alleged promotion denial that occurred prior to October 20, 2001.

12.   Between October 20, 2001, and April 18, 2002, only two tool pushers were hired to work on Rig 19.

13.   The individuals hired to work on Rig 19 as tool pushers during the relevant time period were more qualified for the position than Plaintiff.

14.   Other tool pushers who were assigned to work at Rig 19 during the relevant time period were hired to work on other rigs and transferred to Rig 19 often for a brief period of time while a rig was down in order to avoid having to lay off the employee.

15.   Cactus Drilling Company conducted a legitimate investigation into Plaintiff's complaints after it was advised that he had filed a charge of discrimination.

16.  Plaintiff did not suffer severe, mental anguish as a result of any action or conduct for which Defendants are liable.

17.  Plaintiff is not entitled to recover attorneys' fees in this case.

18.  In the event the Court determines that Plaintiff is entitled to recover attorneys' fees, those fees should be limited to what is reasonable and necessary and should not include any lodestar addition to the otherwise reasonable and necessary fee.

19.  Plaintiff's complaint about hostile work environment is factually and legally insufficient. Plaintiff asks the fact-finder to conclude that coarse, vulgar language which had nothing to do with his race was actually based on his race because there were a few, isolated comments in which he was referred to as an Indian.

20.  The few statements which Plaintiff alleges were made are not objectively sufficient to establish a hostile work environment.

21.  Plaintiff had the authority to fire or otherwise discipline two off the employees he claims made racial or vulgar comments to or about him, but did not do so.

22.  In each instance where Plaintiff complained about comments or conduct made to or directed at him, Cactus Drilling Company took prompt, remedial corrective action. In connection with any other instances about which Plaintiff

now complains, Plaintiff failed to take advantage of the company's policies regarding complaints and failed to give Cactus Drilling Company the opportunity to take preventive or corrective action.

23. Plaintiff may not base his claims on any conduct which occurred more than 180 days prior to April 18, 2002, the date on which Plaintiff filed his charge of discrimination with the Texas Human Rights Commission.

24. The statements upon which Plaintiff relies are legally and factually insufficient to show direct evidence of discrimination.

25. The statements upon which Plaintiff relies are legally and factually insufficient to support an inference of discrimination.

26. The statements which Plaintiff alleges show racial animus were isolated, sporadic statements made by non-decisionmakers.

27. Mere profanity is insufficient to show racial animus and support an inference of race discrimination.

28. Mere profanity is insufficient to establish a hostile work environment.

29. Plaintiff cannot establish his *prima facie* case of race discrimination.

30. Plaintiff cannot establish his *prima facie* case of hostile work environment.

31. Plaintiff cannot establish a *prima facie* case of retaliation.

32. Plaintiff cannot establish a *prima facie* case of constructive discharge.

33. Defendants had a legitimate, non-discriminatory reason for each decision it made regarding Plaintiff and his employment.

34. Plaintiff cannot rebut Defendants' legitimate, non-discriminatory reasons for the decisions made relating to Plaintiff and his employment.

35. After Plaintiff's charge of discrimination was filed, Cactus Drilling Company conducted an investigation of his claims in an effort to address his concerns. Although Defendant did not find that Plaintiff had been discriminated against or subjected to a racially hostile work environment, Defendant placed Plaintiff on paid leave while attempting to find another rig where Plaintiff could continue his employment. Although Cactus Drilling Company offered Plaintiff a transfer to two different rigs, Plaintiff refused to report to work at either rig.

36. Plaintiff's constructive discharge claim is factually and legally insufficient.

37. Plaintiff voluntarily quit his employment with Cactus Drilling Company and, therefore, is not entitled to any back pay and is not entitled to any front pay.

38. Plaintiff has admitted that after he filed his charge of discrimination, everyone employed by Cactus Drilling Company was nice to him.

39. Plaintiff has failed to provide information to Defendants from which it can be determined what, if any, back pay, front pay, or compensatory damages he is claiming and, therefore, is prohibited from recovering any amount over and

above what he can prove based on records provided by Cactus Drilling Company.

40.    Defendants did not act with malice or with reckless indifference to Plaintiff's state-protected rights and, therefore, Plaintiff is not entitled to recover punitive damages from Defendant.

## 6.    ADMISSIONS OF FACT:

The parties reserve all evidentiary objections raised in any motion in limine filed herein or raised at trial.

1.    Plaintiff refurbished Rig 19 at the yard in Oklahoma City, helped move it near Fort Stockton and helped spud it into the ground.

2.    Plaintiff asked Elvick for the open tool pusher position and Elvick "blew off" Plaintiff without inquiring as to Plaintiff's experience.

3.    Gwen Johnson was told by Elvick during her investigation that Plaintiff asked Elvick for a tool pusher job.

4.    Faron Parker and Elvick were the only drilling superintendents overseeing Rig 19 between October 20, 2001, and April 18, 2002.

5.    Gwen Johnson swore in interrogatory answers that Defendant did not know whether Plaintiff advised anyone on location of his interest in being moved to a tool pusher position.

6.    Ms. Johnson later corrected that statement in supplemental interrogatory answers to state that Plaintiff did discuss with Faron Parker and Larry Elvick his interest in being a tool pusher.

7.    Following the investigation of Plaintiff's charge of discrimination filed with the Texas Human Rights Commission, Plaintiff received a Dismissal and Notice of Rights, which stated that "Based upon its investigation, the [Commission] is unable to conclude that the information obtained established violations of the statutes. This does not certify that [Cactus Drilling Company] is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge."

8.    During the time that Cactus Drilling Company was in operation, it employed a total of 1,603 persons.

9.    Gwen Johnson and an attorney were assigned the job of investigating the allegations alleged in Plaintiff's charge of discrimination.

10.    Gwen Johnson prepared a paper entitled "Problems at Rig" which recited the results of her investigation into Plaintiff's charge of discrimination.

11.    Plaintiff has worked in the oil drilling industry for approximately 30 years.

12.    Defendant never offered Plaintiff a tool pusher position.

13.    Plaintiff requested a demotion.

14. On occasion between September 2001 and February 2002, Plaintiff performed welding work as an independent contractor for Cactus Drilling Company.

15. The main office requested that Plaintiff resubmit welding invoices several times.

16. Elvick formerly worked for Pure Resources.

17. Tim Higgins talked with Elvick about Plaintiff being a tool pusher.

18. Prior to Plaintiff filing suit Tim Higgins never saw Gwen Johnson's report entitled "Problems at Rig 19. "

19. During Gwen Johnson's investigation, Tim Higgins was never asked whether Plaintiff requested the job of tool pusher.

20. During Cactus Drilling Company's investigation of Plaintiff's charge of discrimination, Plaintiff told Tim Higgins, the Cactus Operations Manager, that Donnie Leek had given him "a good cussing."

21. The more experience a person has as a tool pusher the easier it is to get a tool pushing job in the future.

22. In the oil drilling industry persons may work themselves up to higher paying jobs through experience.

23. Gwen Johnson was and is an employee of Kaiser Francis Oil Company.

24.  Defendant did not have a human resources department separate from Kaiser Francis Oil Company.

25.  Donnie Leek referred to Plaintiff as a "mother-fucker. "

26.  Gwen Johnson's investigation found no racial animus toward Plaintiff at Rig 19.

27.  Cactus Drilling Company's investigation of Plaintiff's complaints found no racial discrimination or harassment at Rig 19.

28.  The Hall brothers would call Plaintiff a "pretty-long-haired bitch" and "mother-fucking Indian."

29.  Plaintiff Paul Herrera began working for Defendant Cactus Drilling Company on November 22, 2000.

30.  Plaintiff worked as a driller for Defendant.

31.  Plaintiff filed suit within 60 days of his receipt of a Notice of Right to file civil action from the Texas Commission on Human Rights.

32.  Plaintiff's employment with Defendant ended on August 2, 2002.

33.  Plaintiff filed his charge of discrimination with the Texas Human Rights Commission on April 18, 2002.

34.  Plaintiff was offered a transfer on two different rigs following his complaints.

35.   Plaintiff failed to report to work at either of the rigs to which he had been offered a transfer.

36.   Plaintiff was told that if he failed to report to work at the second rig, after he refused to report to the first rig, that he would be considered as having voluntarily abandoned his job.

37.   None of Plaintiff's claims involve physical conduct or contact; rather, Plaintiff's claims involve complaints about alleged verbal abuse he suffered.

38.   Donnie Leek, the "company man," was not an employee of Cactus Drilling Company, but was an employee of Pure Resources.

39.   After receiving a copy of Plaintiff's charge of discrimination, Cactus Drilling Company conducted an on-site investigation of Plaintiff's complaints.

40.   As a result of Cactus Drilling Company's investigation of Plaintiff's complaints, Cactus Drilling Company sent a letter of reprimand to Larry Elvick, the supervisor about whom Plaintiff complained.

41.   As a result of Cactus Drilling Company's investigation of Plaintiff's complaints, Cactus sent a letter to Pure Resources regarding Plaintiff's complaints about Donnie Leek.

42.   Cactus Drilling Company Policies and Practices Manual includes information relating to how an employee may make a complaint to Cactus.

43.   Cactus Drilling Company Policies and Practices Manual prohibits discrimination and harassment on account of race.

44.   Plaintiff received a copy of Cactus Drilling Company Polices and Practices Manual when he began his employment with Cactus.

**7.    CONTESTED ISSUES OF FACT:**

1.    Whether Plaintiff was discriminated against on account of his race by being denied a promotion to tool pusher.

2.    Whether Plaintiff was discriminated against on account of his race by being denied the opportunity to continuing working as an independent contractor performing welding services while at the same time working as an employee of Cactus Drilling Company.

3.    Whether Plaintiff was subjected to a hostile work environment based on his race.

4.    Whether Plaintiff was retaliated against for filing a charge of discrimination with the Texas Human Rights Commission by being denied the opportunity to continuing working as an independent contractor performing welding services while at the same time working as an employee of Cactus Drilling Company.

5.    Whether Plaintiff was constructively discharged from this employment with Cactus Drilling Company.

6.     Whether Cactus Drilling Company took prompt remedial action when advised of Plaintiff's complaints.

7.     Whether Plaintiff failed to follow/take advantage of Cactus Drilling Company's procedures relating to reporting complaints.

8.     Whether Cactus Drilling Company acted with malice or with reckless indifference to Plaintiff's state-protected rights.

9.     Plaintiff may not base his claims on any conduct which occurred more than 180 days prior to April 18, 2002, the date on which Plaintiff filed his charge of discrimination with the Texas Human Rights Commission.

10.    Plaintiff had less than a year's experience as a tool pusher.

11.    On those occasions that Plaintiff complained to Cactus Drilling Company, Cactus took prompt, remedial action to address the complaints.

12.    Cactus knew that Plaintiff wanted a tool pusher position shortly after Plaintiff was hired in November of 2000.

13.    At least 11 tool pushers were either hired or transferred to Rig 12 during the year Plaintiff worked on Rig 19.

14.    Several of the tool pushers who were hired or transferred to Rig 19 had the same or less experience as a tool pusher than Plaintiff.

15. Plaintiff asked Tim Higgins for an open tool pusher position on Rig 19 and Higgins told Plaintiff to ask Larry Elvick for the job.

16. Between October 20, 2001, and April 18, 2002, two individuals were hired to work as tool pushers on Rig 19.

17. The two individuals hired to work as tool pushers on Rig 19 were more qualified for the tool pusher position than Plaintiff.

18. Sometime in April 2002, Plaintiff asked Tim Higgins about being promoted to a tool pusher position. Mr. Higgins suggested that Plaintiff let Larry Elvick know that he was interested in a position if one became available.

19. During the relevant time tool pushers working for Defendant earned an annual salary of about $75,000 with a vehicle and gasoline provided and better living accommodations. at the Rig site.

20. Since October 1, 2002, Plaintiff has worked for Helmerich & Payne, Inc. as a driller's assistant and then a driller earning approximately $4,600 per month or $55,000 per year.

21. Gwen Johnson swore in an affidavit to the E.E.O.C. that Plaintiff asked Elvick for a tool pusher position.

22. The drilling superintendent was Defendants' highest ranking company official who worked in West Texas.

23. Gwen Johnson swore in an interrogatory answer that Defendant had not located a member of management who was aware that Plaintiff desired to be a tool pusher.

24. Generally the drilling superintendent would be responsible for deciding who would be hired as a tool pusher, subject to approval by the operations manager.

25. Defendant as of June 9, 2003 had not made a determination regarding Plaintiff's qualifications to be a tool pusher.

26. During the period between November 22, 2000 and August 2, 2002 Defendant employed a total of 1,603 persons.

27. Defendant never considered Plaintiff for the job of tool pusher.

28. During the time Plaintiff worked for Defendant, Defendant employed at least 45 men as tool pushers and all were Anglo-American, except one who was part American Indian and light-complexioned and one who was Hispanic.

29. Plaintiff is an excellent driller and a good employee.

30. Based on Plaintiff's experience he was qualified to be a tool pusher.

31. Plaintiff is deeply committed to his American Indian heritage.

32. The "company man, " Donnie Leek had significant power over the details of the work at Rig 19.

33.    Faron Parker and Plaintiff discussed Plaintiff being a tool pusher when Plaintiff was working for Defendant in the yard at Oklahoma City in late 2000 or early 2001.

34.    In late 2000 or early 2001, Faron Parker recommended to Ron Tyson that Plaintiff be promoted to tool pusher.

35.    In late 2000 or early 2001, Faron Parker asked Tim Higgins to promote Plaintiff to tool pusher.

36.    When a person works at a rig as a driller for a while it is implied that the person would like to be promoted to tool pusher.

37.    While Plaintiff was employed by Defendant, Defendant had no employment histories or resumes from some persons who were hired or transferred to tool pusher positions.

38.    After Plaintiff filed his Equal Employment Opportunity Commission complaint his drilling superintendent, Elvick, his tool pusher, Jack Dean, and the company man, Donnie Leek, wanted Plaintiff off Rig 19.

39.    Faron Parker told Elvick several times that Plaintiff was next in line to be a tool pusher.

40.    Plaintiff became so upset with the work environment with Defendant that on one occasion he broke down and cried in front of a consulting engineer.

41. Generally employees do not request demotions.

42. Plaintiff was mistreated by supervisors and employees at Rig 19.

43. Leek had influence on Elvick as to whom obtained the job of tool pusher.

44. Plaintiff did welding for Defendant for about 1 ½ years at his supervisors' request prior to Defendant stopping such assignment in March of 2002.

45. On at least one occasion Plaintiff's supervisor asked Plaintiff to do contract welding while Plaintiff was "on shift."

46. Rig 19 had an inordinate number of tool pushers during the time Plaintiff worked on the rig.

47. Elvick and Leek were friends and drinking buddies for years.

48. It appeared to Tim Higgins that Plaintiff was harassed by Leek.

49. Tim Higgins considered Elvick's character "less than desirable. "

50. When Elvick was hired Plaintiff stopped getting welding jobs from Defendant.

51. Defendant never concluded that Plaintiff was paid for welding jobs he did not do.

52. Plaintiff was never reprimanded for providing welding services while "on hitch. "

53. The notation of experience as a tool pusher on a job application or work history questionnaire indicates a desire by the applicant to be a tool pusher.

54.    Defendant hired or transferred persons to be tool pushers at Rig 19 who were less qualified than Plaintiff.

55.    Plaintiff had to teach tool pushers their jobs at Rig 19.

56.    Jack Dean believed that Plaintiff was a good driller and would make a good tool pusher.

57.    Jack Dean felt like Plaintiff had been mistreated at Rig 19.

58.    After Defendant stopped allowing Plaintiff to do contract welding only Anglo-Americans did the welding jobs at Rig 19.

59.    Elvick admitted that he did not take appropriate action to stop Leek's verbal abuse of Plaintiff.

60.    Elvick admitted to participating in conversations with Leek when Leek referred to Plaintiff as a "damn Indian," a "mother-fucker" and a "son-of-a-bitch" but did not tell Leek about Defendant's policies prohibiting racial slurs and foul language.

61.    Leek has denied making comments about Plaintiff's Native American heritage.

62.    Leek admitted talking about Plaintiff's ponytail.

63.    In Gwen Johnson's investigation she did not interview Faron Parker or ask him if Plaintiff had requested a tool pusher position.

64.  In Gwen Johnson's investigation she did not determine whether any of the tool pushers hired or transferred to Rig 19 were minorities.

65.  In Gwen Johnson's investigation she never determined whether there was merit to Plaintiff's claim that he was over looked for a tool pusher position.

66.  Defendant reprimanded Elvick for failing to report racially-neutral, verbal abuse.

67.  Before Plaintiff was terminated he advised Gwen Johnson that he was confused and afraid and did not trust the company.

68.  Elvick would call Plaintiff "mother fucker" and "damn driller."

69.  Jack Dean would call Plaintiff "stupid mother fucker."

70.  Jack Dean tried to persuade Plaintiff to drop his Equal Employment Opportunity Commission complaint by saying Plaintiff would not get anything but blackballed.

71.  No employee at Rig 19 was working on either of the rigs to which Plaintiff was offered a transfer.

72.  After Plaintiff complained about Robert Hall and Donny Hall, Cactus Drilling Company moved them to the 12-hour shift on Rig 19 that was opposite the 12-hour shift worked by Plaintiff so that they were not working at the same time that Plaintiff was.

73. Cactus Drilling Company had a legitimate, non-discriminatory reason for its decision to stop using Plaintiff as an independent contractor for welding services.

74. Allowing Plaintiff to work for Cactus Drilling Company as both an employee-driller and independent contractor-welder was a conflict of interest.

75. No other Cactus Drilling Company employees were allowed to work as employees of the company while at the same time working as independent contractors for the company.

76. Plaintiff is precluded from presenting evidence regarding any alleged promotion denial that occurred prior to October 20, 2001.

77. Between October 20, 2001, and April 18, 2002, only two tool pushers were hired to work on Rig 19.

78. The individuals hired to work on Rig 19 as tool pushers during the relevant time period were more qualified for the position than Plaintiff.

79. Other tool pushers who were assigned to work at Rig 19 during the relevant time period were hired to work on other rigs and transferred to Rig 19 some for only a brief period of time while a rig was down in order to avoid having to lay off the employee.

80. Mere profanity is insufficient to establish a hostile work environment.

81.    Mere profanity is insufficient to establish race discrimination.

82.    Neither rig involved in the offer to transfer Plaintiff had any employee from Rig 19, the rig about which Plaintiff complains, working on it.

83.    Plaintiff failed to take advantage of preventive or corrective opportunities provided by Cactus Drilling Company.

84.    During any given week for the year preceding Plaintiff's charge of discrimination and the year in which that charge was filed, Cactus Drilling Company had an employment relationship with less than 500 persons, *i.e.*, no more than 487 persons.

## 8.    AGREED PROPOSITIONS OF LAW:

1.    Plaintiff's claims are governed by the Texas Labor Code provisions relating to employment discrimination.

2.    Where the Texas state courts have not addressed an issue involved in a claim under the Texas Labor Code anti-discrimination provisions, the Court may look to cases interpreting and applying Title VII for guidance.

3.    Plaintiff's claims are governed by the *McDonnell-Douglas* burden-shifting analysis.

4.  Once Plaintiff establishes his *prima facie* case, the burden of production shifts to Defendants to articulate a legitimate, non-discriminatory reason for the complained-of action.

5.  Once Defendants have satisfied its burden of production of showing a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to show that the reason given by Defendants is merely a pretext for unlawful discrimination.

6.  The ultimate burden of persuasion is always on Plaintiff.

7.  In order to establish his prima facie case of hostile work environment, Plaintiff must show that (a) he belongs to a protected class, (b) he was subjected to unwelcome harassment, (c) the harassment was based upon his race, and (d) the harassment affected a term, condition or privilege of Plaintiff's employment. In addition, when co-worker harassment is alleged, Plaintiff must also establish that Cactus Drilling Company knew or should have known of the harassment and failed to take steps to stop it. When the alleged harassment involves one of Plaintiff's supervisors, the burden shifts to Cactus Drilling Company to establish that it (a) exercised reasonable care to prevent and correct promptly any harassing behavior and (b) Plaintiff failed to take advantage of Cactus' employment policies and the remedies contained herein.

8.     To constitute a hostile work environment, the unlawful harassment must be objectively offensive as well as subjectively offensive.

9.     Employment discrimination statutes are not general civility codes.

10.     To establish a *prima facie* case of retaliation, Plaintiff must establish that (a) he was engaged in a protected activity, (b) Defendant subjected him to an adverse employment action, and (c) a causal connection existed between Plaintiff's filing his original charge of discrimination and the adverse employment action.

11.     Plaintiff must establish that but for his engaging in protected activity, Defendant would not have committed the alleged retaliatory acts.

12.     In order to establish his claims of constructive discharge, Plaintiff must establish that Cactus Drilling Company made his working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

13.     To show entitlement to punitive damages, Plaintiff must establish that Cactus Drilling Company acted with malice or with reckless indifference to Plaintiff's state-protected rights.

14.     An employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.

15.  Question in race discrimination claim is not whether employer made an erroneous decision, but whether the decision made was made with discriminatory motive.

16.  Employment discrimination laws do not protect against unfair or unwise business decisions, only against decisions motivated by unlawful animus.

17.  The relevant inquiry is whether the conduct about which Plaintiff complains was motivated because of his race.

**9.    CONTESTED PROPOSITIONS OF LAW:**

1.  Whether to prevail on a claim of constructive discharge, Plaintiff must establish a greater degree of severity or pervasiveness of harassment than that required for hostile work environment.

2.  Whether Plaintiff's claims are limited to conduct occurring within 180 days prior to April 18, 2002, the date he filed his charge of discrimination. Whether any claims arising prior to that date are time-barred. <u>Martin v. The Kroger Co.</u>, 65 F.Supp.2d 516, 531 (S.D. Tex. 1999)

3.  Whether the continuing violation exception to 180 day limitation period is apposite here as Plaintiffs denial of a tool pusher position occurred over an approximately 16 month period where a reasonably prudent person would not have understood the reason Plaintiff was not being promoted to tool pusher

was because of his race until approximately 6 months before Plaintiff filed his complaint with the Equal Employment Opportunity Commission.

4.  In order to establish his *prima facie* case of race discrimination, Plaintiff must show that (a) he is a member of a protected class, (b) he applied for and was qualified for the tool pusher position, (c) he was not promoted, and (d) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

5.  Defendant's burden of production to show a legitimate, non-discriminatory basis for actions about which Plaintiff complains is "extremely light." *Thornton v. Neiman Marcus*, 850 F.Supp. 538, 543 (N.D. Tex. 1994).

6.  To prevail on a claim of constructive discharge, Plaintiff must establish a greater degree of severity or pervasiveness of harassment than that required for hostile work environment. *Landgraf v. U.S.I. Film Productions*, 968 F.2d 427, 429-30 (5th Cir.), *aff'd* 511 U.S. 244 (1994); *Harris v. Carrollton, supra*, 2002 Westlaw 31697726 at *4; *Green, supra*, 1 S.W.3d at 134.

7.  Plaintiff's claims are limited to conduct occurring within 180 days prior to April 18, 2002, the date he filed his charge of discrimination. Any claims arising prior to that date are time-barred. Tex. Lab. Code Ann. §21.202; *Pope v. MCI Telecommunications Corporation*, 937 F.2d 258 (5th Cir. 1991);

*Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78 (Tex. App. – Ft. Worth 2003 reh. over.).

8.  "A recurring point in (Supreme Court) opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Shepherd v. Comptroller*, 168 F.3d 871, 874 (5th Cir. 1999). Rather, "we [the Supreme Court] have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775,  118 S. Ct. 2275, 2284 (1998).

9.  In order to establish a racially hostile environment on the basis of verbal comments, proof not of a "few isolated incidents of racial enmity," *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987), but rather "a steady barrage of oppressive racial comments," *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994), *cert. denied*, 516 U.S. 826 (1995), is required.

10. Evaluation of whether a situation creates a racially hostile environment requires taking into account the context of the particular workplace. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82, 118 S.Ct. 998 (1998); *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1537-38 (10th Cir. 1995) (evaluating use of profanity and vulgarity in context of

workplace—construction work); *Benette v. Cinemark, U.S.A., Inc.*, 2003 Westlaw 22966117 at *5-6 (W.D.N.Y.).

11.   The comments of non-Cactus employees are irrelevant in determining whether a hostile work environment exists. *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993).

12.   Profanity by itself is insufficient to establish a hostile environment. *Villarruel v. Gary Community School Corp.*, 28 Fed. Appx. 564, 567-68 (7th Cir. 2002); *Polly & Houston Lighting & Power Co.*, 825 F. Supp. 135, 138 (S.D. Tex. 1993) (per Werlein, J.) ; *Moore v. N & W Ry. Co.*, 55 FEP 226, 230-1 (D. Kan. 1990).

13.   A lateral transfer is not the requisite "adverse employment action," the second element necessary to meet a prima facie case. *See, Burger v. Central Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999); *Hockman, supra*, 282 F. Supp. at 523-24; *Martin v. Boeing-Oak Ridge Co.*, 244 F.Supp.2d 863, 876 (E.D. Tenn. 2002); *cf., Contreras v. Waffle House, Inc.*, 2002 Westlaw 1477442 at *9 (N.D. Tex.)(employee failed to accept offer to transfer to another store).

14.   Tim Higgins, the Cactus Operations Manager, was responsible for deciding who would be hired as a tool pusher.

15.    During any given week for the year preceding Plaintiff's charge of
discrimination and the year in which that charge was filed, Cactus Drilling
Company had an employment relationship with less than 500 persons, *i.e.,* no
more than 487 persons.

**10.    EXHIBITS:**

Attached hereto as Exhibit A is Plaintiffs List of Trial Exhibits.

Attached hereto as Exhibit B is Defendants' List of Trial Exhibits.

**11. WITNESSES:**

Attached hereto as Exhibit C is Plaintiff's List of Trial Witnesses.

Attached hereto as Exhibit D is Defendants' List of Trial Witnesses.

**12.    SETTLEMENT:**

A.    Settlement discussions have transpired, but have been unfruitful.

B.    The parties participated in mediation on January 9, 2004. Absent a favorable
ruling by the Court on Defendants' Motion for Summary Judgment, all settlement
efforts have been exhausted, the case cannot be settled, and it will have to be tried.

**13.    TRIAL:**

A.    Defendants' witnesses all reside and work in the State of Oklahoma. It is
extremely difficult to get from Oklahoma to Brownsville and will make it
imperative that Defendants' counsel have sufficient advance notice of when

Plaintiff will rest and Defendants will need to have witnesses present so that there is no delay in the presentation of evidence. Plaintiff intends to call Defendants' witnesses under the adverse witness rule and will ask the court to require their presence at the start of trial.

B.    Plaintiff anticipates that the trial will last approximately 5 days.

**14.    ATTACHMENTS:**

Attached hereto as Exhibit E is Plaintiff's Proposed Voir Dire Examination.

Attached hereto as Exhibit F is Defendants' Proposed Voir Dire Examination.

Attached hereto as Exhibit G is Plaintiff's Proposed Charge, including instructions, definitions, and special interrogatories, with authority.

Attached hereto as Exhibit H is Defendants' Proposed Charge, including instructions, definitions, and special interrogatories, with authority.

Date: _____

_____
Honorable Judge Hilda G. Tagle
United States District Judge

**JOINT PRE-TRIAL ORDER**
**PAGE 32**

Respectfully submitted,


Barry R. Benton
Law Office of Barry R. Benton
284 Ebony Ave.
Brownsville, Texas 78520
Telephone (956) 546-9900
Facsimile (956) 546-9997
State Bar No. 02176500
Federal Bar No. 3968
Attorney for Plaintiff
PAUL N. HERRERA


Deirdre O. Dexter, OBA #10780
Frederic Dorwart, Lawyers
One City Hall
124 E. Fourth Street, Suite 100
Tulsa, Oklahoma, 74103
Telephone (918) 583-9922
Facsimile (918) 584-2729
State Bar No. 10780
Attorney for Defendants
CACTUS DRILLING COMPANY AND
UNIT CORPORATION

**JOINT PRE-TRIAL ORDER**
**PAGE 33**

.

# EXHIBIT A
# PLAINTIFF'S TRIAL EXHIBITS

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

PAUL N. HERRERA           *

                              *

VS.                      *   CIVIL ACTION NO. B-03-019

                              *

CACTUS DRILLING COMPANY and *

UNIT CORPORATION         *

### PLAINTIFF'S EXHIBIT LIST

      Plaintiff Paul N. Herrera hereby submits his exhibit list for use at the trial of

the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1. | Texas Commission on Human Rights and Equal Employment Opportunity Commission Charge of Discrimination | |
| 2. | Charge Questionnaire | |
| 3. | Response of Cactus Drilling Company To The Amended Charge Of Discrimination And Request For Information And Statement Of Position | |
| 4. | Equal Employment Opportunity Commission Affidavit of Paul Herrera dated April 18, 2002. | |
| 5. | Affidavit of Gwen Johnson to Equal Employment Opportunity Commission charge signed July 1, 2002. | |
| 6. | Equal Employment Opportunity Commission Right to Sue Letter | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 7. | Texas Commission on Human Rights Notice of Right to File Civil Action dated October 24, 2002. | |
| 8. | Letter from James A. Willis to Gary DuPriest dated June 20, 2002 and letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002. | |
| 9. | Investigation acknowledgment signed by Donny Leek. | |
| 10. | Letter from Paul Herrera to James E. Lyon in response to July 31, 2002 letter. | |
| 11. | Letter from Paul Herrera to the Equal Employment Opportunity Commission dated September 19, 2002. | |
| 12. | Letter from Gwen Johnson to Paul Herrera dated June 25, 2002. | |
| 13. | ACKNOWLEDGMENT | |
| 14. | Problems at Rig 19 | |
| 15. | Letter from Paul Herrera to Gwen Johnson dated August 2, 2002. | |
| 16. | Memos from Tim Higgins to Cactus Drilling Company employees dated September 20, 2001 and December 14, 2001. | |
| 17. | Email from Jerry Orndorff to Ron Tyson dated February 28, 2002. | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|

18.               Employee Experience and Work History
                                18a.  Audie Ray Annesley
                                18b.  Jeffrey T. Sharp
                                18c.  David Lee
                                18d.  Charles E. Sitton
                                18e.  Michael Simpson
                                18f.  Billy Tillman
                                18g.  Tim Prichard
                                18h.  Kim Hawthorn
                                18i.   Marion Pritchard
                                18j.   Paul N. Herrera

19.               List of employees at Rig 19 and Sample Cactus Drilling Company Organizational Chart.

20.               Cactus Drilling Company's Policy & Practice

21.               List of previous employees that are ineligible for rehire.

22.               Business cards of places Paul Herrera applied for work.

23.               Diploma from University of Houston.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

PAUL N. HERRERA      \*

                               \*

VS.                       \*    CIVIL ACTION NO. B-03-019

                               \*

CACTUS DRILLING COMPANY and \*

UNIT CORPORATION         \*

## PLAINTIFF'S EXHIBIT LIST

       Plaintiff Paul N. Herrera hereby submits his exhibit list for use at the trial of

the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1. | Texas Commission on Human Rights and Equal Employment Opportunity Commission Charge of Discrimination | |
| 2. | Charge Questionnaire | |
| 3. | Response of Cactus Drilling Company To The Amended Charge Of Discrimination And Request For Information And Statement Of Position | |
| 4. | Equal Employment Opportunity Commission Affidavit of Paul Herrera dated April 18, 2002. | |
| 5. | Affidavit of Gwen Johnson to Equal Employment Opportunity Commission charge signed July 1, 2002. | |
| 6. | Equal Employment Opportunity Commission Right to Sue Letter | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 7. | Texas Commission on Human Rights Notice of Right to File Civil Action dated October 24, 2002. | |
| 8. | Letter from James A. Willis to Gary DuPriest dated June 20, 2002 and letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002. | |
| 9. | Investigation acknowledgment signed by Donny Leek. | |
| 10. | Letter from Paul Herrera to James E. Lyon in response to July 31, 2002 letter. | |
| 11. | Letter from Paul Herrera to the Equal Employment Opportunity Commission dated September 19, 2002. | |
| 12. | Letter from Gwen Johnson to Paul Herrera dated June 25, 2002. | |
| 13. | ACKNOWLEDGMENT | |
| 14. | Problems at Rig 19 | |
| 15. | Letter from Paul Herrera to Gwen Johnson dated August 2, 2002. | |
| 16. | Memos from Tim Higgins to Cactus Drilling Company employees dated September 20, 2001 and December 14, 2001. | |
| 17. | Email from Jerry Orndorff to Ron Tyson dated February 28, 2002. | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|

18.         Employee Experience and Work History
            18a.  Audie Ray Annesley
            18b.  Jeffrey T. Sharp
            18c.  David Lee
            18d.  Charles E. Sitton
            18e.  Michael Simpson
            18f.  Billy Tillman
            18g.  Tim Prichard
            18h.  Kim Hawthorn
            18i.  Marion Pritchard
            18j.  Paul N. Herrera

19.         List of employees at Rig 19 and
            Sample Cactus Drilling Company
            Organizational Chart.

20.         Cactus Drilling Company's Policy
            & Practice

21.         List of previous employees that are
            ineligible for rehire.

22.         Business cards of places Paul Herrera
            applied for work.

23.         Diploma from University of Houston.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

PAUL N. HERRERA                    *
                                   *
VS.                                *   CIVIL ACTION NO. B-03-019
                                   *
CACTUS DRILLING COMPANY and *
UNIT CORPORATION                   *

## PLAINTIFF'S EXHIBIT LIST

    Plaintiff Paul N. Herrera hereby submits his exhibit list for use at the trial of

the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1. | Texas Commission on Human Rights and Equal Employment Opportunity Commission Charge of Discrimination | |
| 2. | Charge Questionnaire | |
| 3. | Response of Cactus Drilling Company To The Amended Charge Of Discrimination And Request For Information And Statement Of Position | |
| 4. | Equal Employment Opportunity Commission Affidavit of Paul Herrera dated April 18, 2002. | |
| 5. | Affidavit of Gwen Johnson to Equal Employment Opportunity Commission charge signed July 1, 2002. | |
| 6. | Equal Employment Opportunity Commission Right to Sue Letter | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 7. | Texas Commission on Human Rights Notice of Right to File Civil Action dated October 24, 2002. | |
| 8. | Letter from James A. Willis to Gary DuPriest dated June 20, 2002 and letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002. | |
| 9. | Investigation acknowledgment signed by Donny Leek. | |
| 10. | Letter from Paul Herrera to James E. Lyon in response to July 31, 2002 letter. | |
| 11. | Letter from Paul Herrera to the Equal Employment Opportunity Commission dated September 19, 2002. | |
| 12. | Letter from Gwen Johnson to Paul Herrera dated June 25, 2002. | |
| 13. | ACKNOWLEDGMENT | |
| 14. | Problems at Rig 19 | |
| 15. | Letter from Paul Herrera to Gwen Johnson dated August 2, 2002. | |
| 16. | Memos from Tim Higgins to Cactus Drilling Company employees dated September 20, 2001 and December 14, 2001. | |
| 17. | Email from Jerry Orndorff to Ron Tyson dated February 28, 2002. | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|

18.                     Employee Experience and Work History
                             18a.   Audie Ray Annesley
                             18b.   Jeffrey T. Sharp
                             18c.   David Lee
                             18d.   Charles E. Sitton
                             18e.   Michael Simpson
                             18f.   Billy Tillman
                             18g.   Tim Prichard
                             18h.   Kim Hawthorn
                             18i.   Marion Pritchard
                             18j.   Paul N. Herrera

19.                     List of employees at Rig 19 and
Sample Cactus Drilling Company
Organizational Chart.

20.                     Cactus Drilling Company's Policy
& Practice

21.                     List of previous employees that are
ineligible for rehire.

22.                     Business cards of places Paul Herrera
applied for work.

23.                     Diploma from University of Houston.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

PAUL N. HERRERA  ·      *
            *
VS.            *  CIVIL ACTION NO. B-03-019
            *
CACTUS DRILLING COMPANY and *
UNIT CORPORATION      *

## PLAINTIFF'S EXHIBIT LIST

   Plaintiff Paul N. Herrera hereby submits his exhibit list for use at the trial of the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1. | Texas Commission on Human Rights and Equal Employment Opportunity Commission Charge of Discrimination | |
| 2. | Charge Questionnaire | |
| 3. | Response of Cactus Drilling Company To The Amended Charge Of Discrimination And Request For Information And Statement Of Position | |
| 4. | Equal Employment Opportunity Commission Affidavit of Paul Herrera dated April 18, 2002. | |
| 5. | Affidavit of Gwen Johnson to Equal Employment Opportunity Commission charge signed July 1, 2002. | |
| 6. | Equal Employment Opportunity Commission Right to Sue Letter | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 7. | Texas Commission on Human Rights Notice of Right to File Civil Action dated October 24, 2002. | |
| 8. | Letter from James A. Willis to Gary DuPriest dated June 20, 2002 and letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002. | |
| 9. | Investigation acknowledgment signed by Donny Leek. | |
| 10. | Letter from Paul Herrera to James E. Lyon in response to July 31, 2002 letter. | |
| 11. | Letter from Paul Herrera to the Equal Employment Opportunity Commission dated September 19, 2002. | |
| 12. | Letter from Gwen Johnson to Paul Herrera dated June 25, 2002. | |
| 13. | ACKNOWLEDGMENT | |
| 14. | Problems at Rig 19 | |
| 15. | Letter from Paul Herrera to Gwen Johnson dated August 2, 2002. | |
| 16. | Memos from Tim Higgins to Cactus Drilling Company employees dated September 20, 2001 and December 14, 2001. | |
| 17. | Email from Jerry Orndorff to Ron Tyson dated February 28, 2002. | |

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 18. | Employee Experience and Work History | |
| | 18a.  Audie Ray Annesley | |
| | 18b.  Jeffrey T. Sharp | |
| | 18c.  David Lee | |
| | 18d.  Charles E. Sitton | |
| | 18e.  Michael Simpson | |
| | 18f.  Billy Tillman | |
| | 18g.  Tim Prichard | |
| | 18h.  Kim Hawthorn | |
| | 18i.  Marion Pritchard | |
| | 18j.  Paul N. Herrera | |
| 19. | List of employees at Rig 19 and Sample Cactus Drilling Company Organizational Chart. | |
| 20. | Cactus Drilling Company's Policy & Practice | |
| 21. | List of previous employees that are ineligible for rehire. | |
| 22. | Business cards of places Paul Herrera applied for work. | |
| 23. | Diploma from University of Houston. | |

# EXHIBIT B
## DEFENDANTS' TRIAL EXHIBITS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                    )
                                 )
            Plaintiff,           )
                                 )      Civil Case No. B-03-019
v.                               )      Judge Hilda G. Tagle
                                 )
CACTUS DRILLING COMPANY          )
and UNIT CORPORATION,            )
                                 )
            Defendants.          )

## DEFENDANTS' EXHIBIT LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their exhibit list

for use at the trial of the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1 | Understanding by Employee signed by Paul Herrera on 11-22-00 | |
| 2 | Cactus Drilling Company Policies and Practices Manual | |
| 3 | Contractors Invoices submitted by Paul Nachie H. to Cactus Drilling Company for welding services performed | |
| 4 | Checks for payment of Contractors Invoices numbered 1139, 1135, 1124 and 1125, and 1123, 1122 and 1089 | |
| 5 | W-2 and 1099-MISC for Plaintiff for tax year 2001 | |

6               Calendar 2002 with Plaintiff's handwritten notes

7               Selected documents from Plaintiff's personnel file

at Cactus Drilling Company

8               Letter from Cactus Drilling Company to Larry Elvick

dated June 20, 2002

9               First page of a letter from Cactus Drilling Company to

Gary DuPriest at Pure Resources dated June 20, 2002

10              Investigation Acknowledgment signed by Donny Leek

on 5-14-02

11              Letter from Cactus Drilling Company to Plaintiff dated

July 9, 2002

12              Letter from Cactus Drilling Company to Plaintiff dated

July 19, 2002

13              Letter from Gwen Johnson to Plaintiff dated

August 1, 2002, with handwritten notes

14              Letter from Cactus Drilling Company to Plaintiff

dated August 2, 2002

15              E-mail from Gwen Johnson to Kim Charles dated

July 8, 2002, regarding Plaintiff's transfer to another rig

16              Termination Request form and two payroll authorization

forms relating to termination of Plaintiff's employment

with Cactus Drilling Company

17              Selected documents from the personnel files of

|    | tool pushers assigned to work at Rig 19 from August 2001 to August 2, 2002[1] |
|----|----|
| 18 | Summary chart showing comparison of Contractors Invoices submitted to Cactus Drilling Company by Plaintiff, work performed and dates Plaintiff was working as an employee for Cactus Drilling Company |
| 19 | Summary of number of employees of Cactus Drilling Company for each payroll period in 2001 and 2002 |

---

[1]Defendants reserve the right to withdraw certain of these exhibits if the Court grants Defendants' motion in limine regarding the statute of limitations contained in the Texas Human Rights Commission Act.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,             )
                              )
           Plaintiff,      )
                              )     Civil Case No. B-03-019
v.                          )     Judge Hilda G. Tagle
                              )
CACTUS DRILLING COMPANY   )
and UNIT CORPORATION,      )
                              )
          Defendants.    )

## DEFENDANTS' EXHIBIT LIST

     Defendants Cactus Drilling Company and Unit Corporation hereby submit their exhibit list

for use at the trial of the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1 | Understanding by Employee signed by Paul Herrera on 11-22-00 | |
| 2 | Cactus Drilling Company Policies and Practices Manual | |
| 3 | Contractors Invoices submitted by Paul Nachie H. to Cactus Drilling Company for welding services performed | |
| 4 | Checks for payment of Contractors Invoices numbered 1139, 1135, 1124 and 1125, and 1123, 1122 and 1089 | |
| 5 | W-2 and 1099-MISC for Plaintiff for tax year 2001 | |

| 6 | Calendar 2002 with Plaintiff's handwritten notes |
|---|---|
| 7 | Selected documents from Plaintiff's personnel file at Cactus Drilling Company |
| 8 | Letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002 |
| 9 | First page of a letter from Cactus Drilling Company to Gary DuPriest at Pure Resources dated June 20, 2002 |
| 10 | Investigation Acknowledgment signed by Donny Leek on 5-14-02 |
| 11 | Letter from Cactus Drilling Company to Plaintiff dated July 9, 2002 |
| 12 | Letter from Cactus Drilling Company to Plaintiff dated July 19, 2002 |
| 13 | Letter from Gwen Johnson to Plaintiff dated August 1, 2002, with handwritten notes |
| 14 | Letter from Cactus Drilling Company to Plaintiff dated August 2, 2002 |
| 15 | E-mail from Gwen Johnson to Kim Charles dated July 8, 2002, regarding Plaintiff's transfer to another rig |
| 16 | Termination Request form and two payroll authorization forms relating to termination of Plaintiff's employment with Cactus Drilling Company |
| 17 | Selected documents from the personnel files of |

tool pushers assigned to work at Rig 19 from August

2001 to August 2, 2002[1]

18          Summary chart showing comparison of Contractors

Invoices submitted to Cactus Drilling Company by

Plaintiff, work performed and dates Plaintiff was

working as an employee for Cactus Drilling Company

19          Summary of number of employees of Cactus Drilling

Company for each payroll period in 2001 and 2002

---

[1]Defendants reserve the right to withdraw certain of these exhibits if the Court grants Defendants' motion in limine regarding the statute of limitations contained in the Texas Human Rights Commission Act.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                    )
                                 )
            Plaintiff,           )
                                 )    Civil Case No. B-03-019
v.                               )    Judge Hilda G. Tagle
                                 )
CACTUS DRILLING COMPANY          )
and UNIT CORPORATION,            )
                                 )
            Defendants.          )

## DEFENDANTS' EXHIBIT LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their exhibit list

for use at the trial of the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1 | Understanding by Employee signed by Paul Herrera on 11-22-00 | |
| 2 | Cactus Drilling Company Policies and Practices Manual | |
| 3 | Contractors Invoices submitted by Paul Nachie H. to Cactus Drilling Company for welding services performed | |
| 4 | Checks for payment of Contractors Invoices numbered 1139, 1135, 1124 and 1125, and 1123, 1122 and 1089 | |
| 5 | W-2 and 1099-MISC for Plaintiff for tax year 2001 | |

| | |
|---|---|
| 6 | Calendar 2002 with Plaintiff's handwritten notes |
| 7 | Selected documents from Plaintiff's personnel file at Cactus Drilling Company |
| 8 | Letter from Cactus Drilling Company to Larry Elvick dated June 20, 2002 |
| 9 | First page of a letter from Cactus Drilling Company to Gary DuPriest at Pure Resources dated June 20, 2002 |
| 10 | Investigation Acknowledgment signed by Donny Leek on 5-14-02 |
| 11 | Letter from Cactus Drilling Company to Plaintiff dated July 9, 2002 |
| 12 | Letter from Cactus Drilling Company to Plaintiff dated ' July 19, 2002 |
| 13 | Letter from Gwen Johnson to Plaintiff dated August 1, 2002, with handwritten notes |
| 14 | Letter from Cactus Drilling Company to Plaintiff dated August 2, 2002 |
| 15 | E-mail from Gwen Johnson to Kim Charles dated July 8, 2002, regarding Plaintiff's transfer to another rig |
| 16 | Termination Request form and two payroll authorization forms relating to termination of Plaintiff's employment with Cactus Drilling Company |
| 17 | Selected documents from the personnel files of |

tool pushers assigned to work at Rig 19 from August 2001 to August 2, 2002[1]

18    Summary chart showing comparison of Contractors Invoices submitted to Cactus Drilling Company by Plaintiff, work performed and dates Plaintiff was working as an employee for Cactus Drilling Company

19    Summary of number of employees of Cactus Drilling Company for each payroll period in 2001 and 2002

---

[1]Defendants reserve the right to withdraw certain of these exhibits if the Court grants Defendants' motion in limine regarding the statute of limitations contained in the Texas Human Rights Commission Act.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                    )
                                 )
            Plaintiff,           )
                                 )      Civil Case No. B-03-019
v.                               )      Judge Hilda G. Tagle
                                 )
CACTUS DRILLING COMPANY   )
and UNIT CORPORATION,            )
                                 )
            Defendants.          )

## DEFENDANTS' EXHIBIT LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their exhibit list

for use at the trial of the above-entitled cause.

| Exhibit No. | Description | Admitted/Excluded |
|---|---|---|
| 1 | Understanding by Employee signed by Paul Herrera on 11-22-00 | |
| 2 | Cactus Drilling Company Policies and Practices Manual | |
| 3 | Contractors Invoices submitted by Paul Nachie H. to Cactus Drilling Company for welding services performed | |
| 4 | Checks for payment of Contractors Invoices numbered 1139, 1135, 1124 and 1125, and 1123, 1122 and 1089 | |
| 5 | W-2 and 1099-MISC for Plaintiff for tax year 2001 | |

6          Calendar 2002 with Plaintiff's handwritten notes

7          Selected documents from Plaintiff's personnel file

           at Cactus Drilling Company

8          Letter from Cactus Drilling Company to Larry Elvick

           dated June 20, 2002

9          First page of a letter from Cactus Drilling Company to

           Gary DuPriest at Pure Resources dated June 20, 2002

10         Investigation Acknowledgment signed by Donny Leek

           on 5-14-02

11         Letter from Cactus Drilling Company to Plaintiff dated

           July 9, 2002

12         Letter from Cactus Drilling Company to Plaintiff dated

           July 19, 2002

13         Letter from Gwen Johnson to Plaintiff dated

           August 1, 2002, with handwritten notes

14         Letter from Cactus Drilling Company to Plaintiff

           dated August 2, 2002

15         E-mail from Gwen Johnson to Kim Charles dated

           July 8, 2002, regarding Plaintiff's transfer to another rig

16         Termination Request form and two payroll authorization

           forms relating to termination of Plaintiff's employment

           with Cactus Drilling Company

17         Selected documents from the personnel files of

tool pushers assigned to work at Rig 19 from August

2001 to August 2, 2002[1]

18          Summary chart showing comparison of Contractors

Invoices submitted to Cactus Drilling Company by

Plaintiff, work performed and dates Plaintiff was

working as an employee for Cactus Drilling Company

19          Summary of number of employees of Cactus Drilling

Company for each payroll period in 2001 and 2002

---

[1]Defendants reserve the right to withdraw certain of these exhibits if the Court grants Defendants' motion in limine regarding the statute of limitations contained in the Texas Human Rights Commission Act.

# EXHIBIT C
# PLAINTIFF'S TRIAL WITNESSES

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

PAUL N. HERRERA         *

                         *

VS.                     *    CIVIL ACTION NO. B-03-019

                         *

CACTUS DRILLING COMPANY and *

UNIT CORPORATION       *

## PLAINTIFF'S WITNESS LIST

      Plaintiff Paul N. Herrera hereby submits his witness list for use at the trial of the above-entitled cause.

1.    Paul N. Herrera
     PO Box 574
     Santa Rosa, Texas 78593
     He is the plaintiff. He will explain his facts and reasons why he believes he was discriminated against, harassed, retaliated against and forced to quit his job because he is a Native-American and the damages resulting therefrom.

2.    Elva Herrera
     PO Box 574
     Santa Rosa, Texas 78593
     She knows about the mental anguish Plaintiff suffered because of his treatment by Defendant and the consequences of being forced to leave his job with Defendant.

3.    Faron Parker
     He was one of Plaintiff's supervisors with Defendant who recommended Plaintiff for a tool pusher position because Plaintiff was qualified and had seniority. He also authorized Plaintiff to perform contract welding services for Defendant.

4. **Tim Higgins**
   Operation Manager of Cactus who has knowledge that Plaintiff asked for a tool pusher position and was never offered one.

5. **John Moore**
   Co-worker who will testify about the hostile working environment at Defendant's work site, Plaintiff's qualifications to be a tool pusher and what happened when Plaintiff asked for the position; and what happened after Plaintiff filed a complaint with the Equal Employment Opportunity Commission.

6. **Gwen Johnson**
   Human Resources Manager for Kaiser Francis Oil who investigated Plaintiff's complaint for Defendant.

7. **Ray Sambrano**
   He worked with Plaintiff while employed with Defendant and is familiar with the work environment.

8. **Barry R. Benton**
   284 Ebony Avenue
   Brownsville, Texas 78520
   He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

9. **Phil Bellamy**
   815 Ridgewood
   Brownsville, Texas 78520
   He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

PAUL N. HERRERA            *
                          *
VS.                       *   CIVIL ACTION NO. B-03-019
                          *
CACTUS DRILLING COMPANY and *
UNIT CORPORATION           *

## PLAINTIFF'S WITNESS LIST

Plaintiff Paul N. Herrera hereby submits his witness list for use at the trial of the above-entitled cause.

1.    Paul N. Herrera
      PO Box 574
      Santa Rosa, Texas 78593
      He is the plaintiff.  He will explain his facts and reasons why he believes he was discriminated against, harassed, retaliated against and forced to quit his job because he is a Native-American and the damages resulting therefrom.

2.    Elva Herrera
      PO Box 574
      Santa Rosa, Texas 78593
      She knows about the mental anguish Plaintiff suffered because of his treatment by Defendant and the consequences of being forced to leave his job with Defendant.

3.    Faron Parker
      He was one of Plaintiff's supervisors with Defendant who recommended Plaintiff for a tool pusher position because Plaintiff was qualified and had seniority.  He also authorized Plaintiff to perform contract welding services for Defendant.

4.    **Tim Higgins**
Operation Manager of Cactus who has knowledge that Plaintiff asked for a tool pusher position and was never offered one.

5.    **John Moore**
Co-worker who will testify about the hostile working environment at Defendant's work site, Plaintiff's qualifications to be a tool pusher and what happened when Plaintiff asked for the position; and what happened after Plaintiff filed a complaint with the Equal Employment Opportunity Commission.

6.    **Gwen Johnson**
Human Resources Manager for Kaiser Francis Oil who investigated Plaintiff's complaint for Defendant.

7.    **Ray Sambrano**
He worked with Plaintiff while employed with Defendant and is familiar with the work environment.

8.    **Barry R. Benton**
284 Ebony Avenue
Brownsville, Texas 78520
He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

9.    **Phil Bellamy**
815 Ridgewood
Brownsville, Texas 78520
He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

PAUL N. HERRERA         *
                                    *

VS.                             *     CIVIL ACTION NO. B-03-019
                                    *

CACTUS DRILLING COMPANY and *
UNIT CORPORATION        *

## PLAINTIFF'S WITNESS LIST

Plaintiff Paul N. Herrera hereby submits his witness list for use at the trial of the above-entitled cause.

1.    Paul N. Herrera
       PO Box 574
       Santa Rosa, Texas 78593
       He is the plaintiff. He will explain his facts and reasons why he believes he was discriminated against, harassed, retaliated against and forced to quit his job because he is a Native-American and the damages resulting therefrom.

2.    Elva Herrera
       PO Box 574
       Santa Rosa, Texas 78593
       She knows about the mental anguish Plaintiff suffered because of his treatment by Defendant and the consequences of being forced to leave his job with Defendant.

3.    Faron Parker
       He was one of Plaintiff's supervisors with Defendant who recommended Plaintiff for a tool pusher position because Plaintiff was qualified and had seniority. He also authorized Plaintiff to perform contract welding services for Defendant.

4.    Tim Higgins
      Operation Manager of Cactus who has knowledge that Plaintiff asked for a
      tool pusher position and was never offered one.

5.    John Moore
      Co-worker who will testify about the hostile working environment at
      Defendant's work site, Plaintiff's qualifications to be a tool pusher and what
      happened when Plaintiff asked for the position; and what happened after
      Plaintiff filed a complaint with the Equal Employment Opportunity
      Commission.

6.    Gwen Johnson
      Human Resources Manager for Kaiser Francis Oil who investigated Plaintiff's
      complaint for Defendant.

7.    Ray Sambrano
      He worked with Plaintiff while employed with Defendant and is familiar with
      the work environment.

8.    Barry R. Benton
      284 Ebony Avenue
      Brownsville, Texas 78520
      He will testify to the court only if necessary as to the issue of reasonable and
      necessary attorney's fees.

9.    Phil Bellamy
      815 Ridgewood
      Brownsville, Texas 78520
      He will testify to the court only if necessary as to the issue of reasonable and
      necessary attorney's fees.

PLAINTIFF'S WITNESS LIST
PAGE 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

PAUL N. HERRERA         *
                       *
VS.                   *     CIVIL ACTION NO. B-03-019
                       *
CACTUS DRILLING COMPANY and *
UNIT CORPORATION        *

## PLAINTIFF'S WITNESS LIST

Plaintiff Paul N. Herrera hereby submits his witness list for use at the trial of the above-entitled cause.

1.     Paul N. Herrera
      PO Box 574
      Santa Rosa, Texas 78593
      He is the plaintiff. He will explain his facts and reasons why he believes he was discriminated against, harassed, retaliated against and forced to quit his job because he is a Native-American and the damages resulting therefrom.

2.     Elva Herrera
      PO Box 574
      Santa Rosa, Texas 78593
      She knows about the mental anguish Plaintiff suffered because of his treatment by Defendant and the consequences of being forced to leave his job with Defendant.

3.     Faron Parker
      He was one of Plaintiff's supervisors with Defendant who recommended Plaintiff for a tool pusher position because Plaintiff was qualified and had seniority. He also authorized Plaintiff to perform contract welding services for Defendant.

4.   **Tim Higgins**
     Operation Manager of Cactus who has knowledge that Plaintiff asked for a tool pusher position and was never offered one.

5.   **John Moore**
     Co-worker who will testify about the hostile working environment at Defendant's work site, Plaintiff's qualifications to be a tool pusher and what happened when Plaintiff asked for the position; and what happened after Plaintiff filed a complaint with the Equal Employment Opportunity Commission.

6.   **Gwen Johnson**
     Human Resources Manager for Kaiser Francis Oil who investigated Plaintiff's complaint for Defendant.

7.   **Ray Sambrano**
     He worked with Plaintiff while employed with Defendant and is familiar with the work environment.

8.   **Barry R. Benton**
     284 Ebony Avenue
     Brownsville, Texas 78520
     He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

9.   **Phil Bellamy**
     815 Ridgewood
     Brownsville, Texas 78520
     He will testify to the court only if necessary as to the issue of reasonable and necessary attorney's fees.

# EXHIBIT D
# DEFENDANTS' TRIAL WITNESSES

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                    )
                                 )
            Plaintiff,           )
                                 )     Civil Case No. B-03-019
v.                               )     Judge Hilda G. Tagle
                                 )
CACTUS DRILLING COMPANY  )
and UNIT CORPORATION,            )
                                 )
            Defendants.          )

## DEFENDANTS' WITNESS LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their witness list for use at the trial of the above-entitled cause.

1.      Tim Higgins, 7101 S.W. 29th Street, Oklahoma City, OK 73179.  Mr. Higgins will testify regarding his knowledge of Plaintiff's claims and when he gained that knowledge.  He will also testify regarding the manner in which tool pushers were hired, promoted, assigned and re-assigned to drilling rigs during the time that Mr. Higgins was Operations Manager for Defendant Cactus Drilling Company.  He will testify regarding his conversations with Plaintiff and with Mr. Larry Elvick regarding Plaintiff being promoted to tool pusher and his investigation into Plaintiff's claims.  Mr. Higgins may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

2.      Ms. Gwen Johnson, 6733 S. Yale, Tulsa, OK 74136.  Ms. Johnson will testify regarding her investigation into Plaintiff's complaints and her conversations with Plaintiff.  Ms. Johnson will also testify regarding her efforts to transfer Plaintiff to another rig and his refusal to

report to work. Ms. Johnson may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

     3.    Mr. Ron Tyson, P.O. Box 270848, Oklahoma City, OK 73137. Mr. Tyson may testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

     4.    Mr. Steve Berlin, 6733 S. Yale, Tulsa, OK 74136. Mr. Berlin will authenticate documents and testify regarding the company's policies and procedures relating to discrimination, harassment, reporting and corrective measures. During all times relevant to Plaintiff's claims, Mr. Berlin was Ms. Johnson's supervisor and all actions taken by Ms. Johnson were done at his direction and control. Mr. Berlin will also testify regarding the number of employees with whom Cactus Drilling Company had an employment relationship during each of 20 or more weeks in 2001 and 2002 for purposes of the cap imposed by Tex. Lab. Code §21.2585. Mr. Berlin may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

     5.    Defendants reserve the right to call any witnesses listed by Plaintiff and not objected to by Defendants.

     6.    If other witnesses to be called at trial become known, Defendants will provide their names, addresses and the subject of their testimony to opposing counsel in writing as soon as they are known.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                          )
                                       )
            Plaintiff,                 )
                                       )      Civil Case No. B-03-019
v.                                     )      Judge Hilda G. Tagle
                                       )
CACTUS DRILLING COMPANY                )
and UNIT CORPORATION,                  )
                                       )
            Defendants.                )

## DEFENDANTS' WITNESS LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their witness list

for use at the trial of the above-entitled cause.

1.      Tim Higgins, 7101 S.W. 29th Street, Oklahoma City, OK 73179.  Mr. Higgins will

testify regarding his knowledge of Plaintiff's claims and when he gained that knowledge.  He will

also testify regarding the manner in which tool pushers were hired, promoted, assigned and re-

assigned to drilling rigs during the time that Mr. Higgins was Operations Manager for Defendant

Cactus Drilling Company.  He will testify regarding his conversations with Plaintiff and with Mr.

Larry Elvick regarding Plaintiff being promoted to tool pusher and his investigation into Plaintiff's

claims.  Mr. Higgins may also testify to rebut testimony presented during Plaintiff's case-in-chief,

depending on what the testimony presented is.

2.      Ms. Gwen Johnson, 6733 S. Yale, Tulsa, OK 74136.  Ms. Johnson will testify

regarding her investigation into Plaintiff's complaints and her conversations with Plaintiff.  Ms.

Johnson will also testify regarding her efforts to transfer Plaintiff to another rig and his refusal to

report to work. Ms. Johnson may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

3.    Mr. Ron Tyson, P.O. Box 270848, Oklahoma City, OK 73137. Mr. Tyson may testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

4.    Mr. Steve Berlin, 6733 S. Yale, Tulsa, OK 74136. Mr. Berlin will authenticate documents and testify regarding the company's policies and procedures relating to discrimination, harassment, reporting and corrective measures. During all times relevant to Plaintiff's claims, Mr. Berlin was Ms. Johnson's supervisor and all actions taken by Ms. Johnson were done at his direction and control. Mr. Berlin will also testify regarding the number of employees with whom Cactus Drilling Company had an employment relationship during each of 20 or more weeks in 2001 and 2002 for purposes of the cap imposed by Tex. Lab. Code §21.2585. Mr. Berlin may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

5.    Defendants reserve the right to call any witnesses listed by Plaintiff and not objected to by Defendants.

6.    If other witnesses to be called at trial become known, Defendants will provide their names, addresses and the subject of their testimony to opposing counsel in writing as soon as they are known.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                        )
                                     )
             Plaintiff,              )
                                     )        Civil Case No. B-03-019
v.                                   )        Judge Hilda G. Tagle
                                     )
CACTUS DRILLING COMPANY )
and UNIT CORPORATION,                )
                                     )
             Defendants.             )

## DEFENDANTS' WITNESS LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their witness list for use at the trial of the above-entitled cause.

1.    Tim Higgins, 7101 S.W. 29th Street, Oklahoma City, OK 73179.  Mr. Higgins will testify regarding his knowledge of Plaintiff's claims and when he gained that knowledge.  He will also testify regarding the manner in which tool pushers were hired, promoted, assigned and re-assigned to drilling rigs during the time that Mr. Higgins was Operations Manager for Defendant Cactus Drilling Company.  He will testify regarding his conversations with Plaintiff and with Mr. Larry Elvick regarding Plaintiff being promoted to tool pusher and his investigation into Plaintiff's claims.  Mr. Higgins may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

2.    Ms. Gwen Johnson, 6733 S. Yale, Tulsa, OK 74136.  Ms. Johnson will testify regarding her investigation into Plaintiff's complaints and her conversations with Plaintiff.  Ms. Johnson will also testify regarding her efforts to transfer Plaintiff to another rig and his refusal to

report to work. Ms. Johnson may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

      3.     Mr. Ron Tyson, P.O. Box 270848, Oklahoma City, OK 73137. Mr. Tyson may testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

      4.     Mr. Steve Berlin, 6733 S. Yale, Tulsa, OK 74136. Mr. Berlin will authenticate documents and testify regarding the company's policies and procedures relating to discrimination, harassment, reporting and corrective measures. During all times relevant to Plaintiff's claims, Mr. Berlin was Ms. Johnson's supervisor and all actions taken by Ms. Johnson were done at his direction and control. Mr. Berlin will also testify regarding the number of employees with whom Cactus Drilling Company had an employment relationship during each of 20 or more weeks in 2001 and 2002 for purposes of the cap imposted by Tex. Lab. Code §21.2585. Mr. Berlin may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

      5.     Defendants reserve the right to call any witnesses listed by Plaintiff and not objected to by Defendants.

      6.     If other witnesses to be called at trial become known, Defendants will provide their names, addresses and the subject of their testimony to opposing counsel in writing as soon as they are known.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                          )
                                       )
          Plaintiff,                   )
                                       )          Civil Case No. B-03-019
v.                                     )          Judge Hilda G. Tagle
                                       )
CACTUS DRILLING COMPANY                )
and UNIT CORPORATION,                  )
                                       )
          Defendants.                  )

## DEFENDANTS' WITNESS LIST

Defendants Cactus Drilling Company and Unit Corporation hereby submit their witness list for use at the trial of the above-entitled cause.

1.      Tim Higgins, 7101 S.W. 29th Street, Oklahoma City, OK 73179. Mr. Higgins will testify regarding his knowledge of Plaintiff's claims and when he gained that knowledge. He will also testify regarding the manner in which tool pushers were hired, promoted, assigned and re-assigned to drilling rigs during the time that Mr. Higgins was Operations Manager for Defendant Cactus Drilling Company. He will testify regarding his conversations with Plaintiff and with Mr. Larry Elvick regarding Plaintiff being promoted to tool pusher and his investigation into Plaintiff's claims. Mr. Higgins may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

2.      Ms. Gwen Johnson, 6733 S. Yale, Tulsa, OK 74136. Ms. Johnson will testify regarding her investigation into Plaintiff's complaints and her conversations with Plaintiff. Ms. Johnson will also testify regarding her efforts to transfer Plaintiff to another rig and his refusal to

report to work. Ms. Johnson may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

3.    Mr. Ron Tyson, P.O. Box 270848, Oklahoma City, OK 73137. Mr. Tyson may testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

4.    Mr. Steve Berlin, 6733 S. Yale, Tulsa, OK 74136. Mr. Berlin will authenticate documents and testify regarding the company's policies and procedures relating to discrimination, harassment, reporting and corrective measures. During all times relevant to Plaintiff's claims, Mr. Berlin was Ms. Johnson's supervisor and all actions taken by Ms. Johnson were done at his direction and control. Mr. Berlin will also testify regarding the number of employees with whom Cactus Drilling Company had an employment relationship during each of 20 or more weeks in 2001 and 2002 for purposes of the cap imposed by Tex. Lab. Code §21.2585. Mr. Berlin may also testify to rebut testimony presented during Plaintiff's case-in-chief, depending on what the testimony presented is.

5.    Defendants reserve the right to call any witnesses listed by Plaintiff and not objected to by Defendants.

6.    If other witnesses to be called at trial become known, Defendants will provide their names, addresses and the subject of their testimony to opposing counsel in writing as soon as they are known.

.

.

# EXHIBIT E
# PLAINTIFF'S PROPOSED VOIR DIRE

.

.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

PAUL N. HERRERA                         *
                                        *
VS.                                     *    CIVIL ACTION NO. B-03-019
                                        *
CACTUS DRILLING COMPANY and *
UNIT CORPORATION                        *


## PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION


1.    Has anyone here ever felt discriminated against because of their race?

2.    Does anyone disagree that a person's race should not be a consideration when applying for a job?

      At law there is direct evidence of discrimination, such as a letter from a supervisor that he won't hire someone who is minority. And there is circumstantial evidence of discrimination, such as when an applicant is a minority and qualified for a job, but only white's are hired.

3.    Would anyone here require direct evidence before they could find intentional discrimination?

4.    Does anyone have a problem with our system of allowing juries, under certain circumstances, to award money for damages such as mental anguish or lost earnings?

5.    Does anyone have a problem with our system of allowing juries, under certain circumstances, to award exemplary damages against a Defendant as a punishment for wrongdoing, or as an example to others of what not to do?

6.    Does anyone here feel like a person who works on an oil drilling rig should expect to be called rude names and yelled at?

7.    Has anyone here ever been involved in any way with an employment discrimination case, whether as a plaintiff, defendant, witness or juror?

8.    Does anyone here work in the oil drilling industry or know anyone who works in the oil drilling industry?

9.    Has anyone here felt like they or family have been wrongfully sued?

10.    Specifically does anyone know, or know of, any of the following people:

    1.    Paul Herrera;
    2.    Elva Herrera;.
    3.    Faron Parker;
    4.    Tim Higgins;
    5.    John Moore;
    6.    Gwen Johnson;
    7.    Deirdre O. Dexter, Defendant's attorney and
    8.    Defendant's witnesses.

PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION
PAGE 2

# EXHIBIT F
# DEFENDANTS' PROPOSED VOIR DIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,           )
           )
      Plaintiff,     )
           )     Civil Case No. B-03-019
v.               )     Judge Tagle
           )
CACTUS DRILLING COMPANY )
and UNIT CORPORATION,   )
           )
      Defendants.   )

## DEFENDANTS' PROPOSED QUESTIONS
## FOR VOIR DIRE EXAMINATION

Defendants Cactus Drilling Company and Unit Corporation submit the following proposed

questions for voir dire examination in the above-referenced action.

1.     How many of you have ever served on a jury before?
      – What was the case about?
      – If you served on a civil case, were punitive damages requested?
         – Were punitive damages awarded?
      – Were you the foreperson?
      – What was the outcome of the case?
      – How would you describe your experience as a juror?
      – What did you like or dislike?
      – How do you feel about the fact that you may be a juror in this case?
         – Anxious to serve?
         – Anxious to not serve?

2.     Do your personal, moral or religious beliefs prevent you from being a juror for any reason?
      – If so, how or why?

3.     Is there any reason at all that you believe would make it hard for you to be a juror on this case?

4.     Does anyone feel our system of justice is weighted in favor of one side over another, whether plaintiff or defendant?
      – If so, which side?

– Why?
– Does it make any difference in your view that the plaintiff here is an individual and the defendant is a corporation?
– Why or why not?

5.    Suppose you found out you disagreed with the law in this case.
      – What would you do?
      – Would you be able to follow the law that the Judge tells you applies, even if you disagreed with it?

6.    Law isn't always clear-cut, so the judge has to make rulings throughout the trial. So, during the trial, you may hear the lawyers object and we may have meetings up here at the bench to decide certain issues. You should know that making objections are just a regular part of the trial. It is the lawyers' job to object and do the best job they can for their clients.
      – Is anyone troubled by the fact that you may not get to hear all of the lawyer/judge discussions?
      – Does anyone think that the lawyers should not object, that it means they are just trying to hide something from the jury?

7.    Have you or a close friend or family member ever been involved in a lawsuit?
      – What sort of lawsuit was it?
      – What was the involvement (plaintiff, defendant, witness)?
      – What was the outcome of the lawsuit?
      – Did you think the result was fair?
          – Why or why not?

8.    How many of you believe that most lawsuits are justified?
      – Do any of you believe that many lawsuits are frivolous?
      – Can you give me an example that supports your opinion about whether lawsuits are justified or frivolous.
      – Raise your hand if you feel most are unfair or frivolous.
      – Give me an example that supports your opinion.

9.    Does anyone think that if a plaintiff gets this far, he or she must have a good case?

10.   Does anyone think that if you sue a company you must have a legitimate complaint?
      – Why do you have that opinion?
      – Does anyone disagree with that opinion?
          – Why?

11.   Do you have any opinion regarding lawyers and lawsuits?
      – What is that opinion?
      – What caused you to have that opinion?

2

12.    How many of you think you or someone close to you could have sued someone for something, but decided not to for some reason?
– What did the situation involve?
– Why wasn't a lawsuit filed?
– Was the situation resolved?
    – If so, how was it resolved?

13.    Have you or has anyone close to you ever sued an employer?
– Tell us about the situation.
– What was the outcome of the lawsuit?
– Were you satisfied with the outcome?
– Why or why not?
– Do you think the dispute could have been resolved in any other way?
– Why or why not?
– What effect did that experience have on you?
    – Did the experience affect your opinion of the legal system?
    – In what way?
– Did you have a lawyer?
– What did you think of him/her?

14.    Cactus Drilling Company and its attorney are from out of town.  Does anyone have an opinion about "outsiders" coming into Brownsville for this trial?
– If so, what is that opinion?
– Do you believe you can be fair and impartial in this case, even though the defendant and its attorney are from out of town?

15.    How many of you are originally from this area?
– If you aren't originally from the Brownsville area, where are you from?

16.    Have any of you ever worked in the oilfield?
– What type of job?
– Anyone work on an oil rig?
– What position(s) on rig?

17.    Do any of you watch television shows or movies about the legal profession?
– If so, what is your favorite movie or television show about the legal profession?

18.    Have any of you ever heard a racial remark made at work? Raise your hand.
– What was the remark?
– How did you feel about the remark?
    – Did it offend you?

19.    Have you ever witnessed discrimination or felt that you or someone close to you has

3

been directly affected by discrimination?
- What kind of discrimination (e.g., race, sex)?
- Please explain what happened.
- Was any action taken to take care of the problem?
- Have these experiences made you more or less understanding of prejudice?

20. Are there formal rules about making racial or other discriminatory remarks, jokes or other comments at your work?
- Are the rules enforced?
- How are they enforced?
- If an employee has a complaint about racial remarks being made at work, does the employee have any responsibility to come forward and let the employer know about his complaint?

21. Do you have an opinion about whether claims of discrimination in the workplace generally are or are not real or legitimate?
- What is your opinion?
- Do you believe that some types of discrimination claims are more likely to be real or legitimate than others?
- How can you tell whether or not a claim was real or legitimate?
- Have you ever heard about a complaint of race discrimination that was not real or legitimate?
- Do you have an opinion regarding whether complaints about discrimination are filed too often, not often enough, or only when justified?
    - What is that opinion?

22. In your opinion, is there a difference between a personality conflict and discrimination?
- How can you tell whether a dispute or problem involves a personality conflict rather than workplace discrimination?

23. Based on your work experience, how do corporations treat minority employees today?
- Why do you have that opinion?
- What has your personal experience been?
- If you believe that corporate employers do not treat minority employees fairly, would you be able to fairly and impartially consider the evidence in this case, completely disregarding your opinion in order to reach a decision?
- You understand that in this case the plaintiff must prove that he was discriminated against?

24. Has anyone here ever had a serious negative experience with someone of a different race?
- Tell us about that experience.

4

    – Was the situation resolved?
        – How was the situation resolved?
        – Were you satisfied with the resolution?
        – Why or why not?
    – Has that experience affected your beliefs or opinions about people of a different race?

25.    Have you or has anyone close to you ever experienced any type of discrimination on the job?
    – What type of discrimination?
    – Were you able to do anything about it?
    – Did your employer have rules against discrimination?
    – What happened?

26.    How common do you think racial discrimination is on the job?
    – Why do you think that?

27.    Have you ever worked for a company where race discrimination was claimed by one of the company's employees?
    – How much do you know about the claim?
    – Did you believe that the claim was justified?
        – Why or why not?
    – Has it been resolved?
    – In your opinion was justice done?

28.    Have you ever known anyone who claimed some type of discrimination on the job?
    – What type of discrimination was involved?
    – Did he/she file any legal action?
    – Do you think the legal action was necessary?
    – Do you know the outcome of the legal action?
    – In your opinion, was justice done?
        – Why or why not?

29.    What do you think of the laws we have in the United States about fairness or equality in the workplace?
    – Like the anti-discrimination laws or affirmative actions laws?
    – Quotas?

30.    How many of you regularly vote in municipal elections?

31.    Do any of you speak more than one language?
    – What languages do you speak?
    – Are you fluent in each?

5

– Does anyone have difficulty understanding English, either when it is spoken or when it is written?

– If you have difficulty understanding spoken English, will that affect your ability to listen to the testimony in this case?

– If you have difficult reading English, will that affect your ability to read and understand documents that may be introduced as exhibits in this case?

– If you have difficulty understanding spoken or written English, will that affect your ability to understand the Court's instructions on the law?

32.    Do you have any opinions about how managers and supervisors should deal with reports of discrimination?

> – What are those opinions?

33.    Have you or has anyone close to you ever considered filing a workplace discrimination lawsuit?

> – What were the circumstances leading you to think workplace discrimination had occurred?
> – What type of discrimination was involved?
> – Was a lawsuit filed?
> – If no lawsuit was filed, what caused you or the person close to you to decide not to file?
> – Was the problem resolved?
> – How did the employer handle the complaint?

34.    Have you or has anyone close to you ever had any education, training or experience in the areas of employment law or discrimination?

> – Would that education, training or experience affect your ability to listen to the evidence in this case with an open mind and reach a fair and impartial verdict?

35.    Has anyone ever participated in writing or reviewing employment manuals?

> – Did you cover discrimination and harassment issues?
> – Tell us how the company knew what the rules should be.
> – How was the information communicated to the employees?

36.    Raise your hand if you've ever been a manager or supervisor on any job.

> – Were you ever been accused of treating an employee unfairly?
>> – Of discriminating against an employee?
> – Were you in charge of making decisions about who to hire, fire or promote?
> – How did you decide who to hire for a position?
> – How did you decide who to promote?
> – Were you or your employer ever sued because of a decision you made about hiring or promotion?

6

37.    As an employee, is it important for you to be familiar with the rules and policies of your employer?
> – If so, why?
> – Does your employer employees to be familiar with the rules and policies of the company?
> – How do the employees know what the company rules and policies are?
> – Are they written down?
> – Does someone give a copy of the rules and policies to new employees?
> – Has anyone you work with ever complained about workplace discrimination?
> – Does your employer have a policy or rule about how to deal with workplace discrimination?
> – Does your employer have a policy or rule about reporting workplace discrimination?
> – Are employees expected to report workplace discrimination or other complaints to the employer so that it has the opportunity to take care of the complaints?

38.    How many of you tend to use intuition to make a decision?
> – Do you just know in your heart or "gut" that something is true?
> – Has your intuition ever let you down?
> – Can you give me an example of when your intuition has been right?
>> – Of when your intuition was wrong?

39.    For those of you with experience in a group decision-making process, what is your role, usually?

40.    Will you be able to reach your own independent decision in this case?
> – What if all the other jurors disagree with you, and you've been trying to make a decision for days, what would you do?
> – If all the other jurors disagreed with you, but you were absolutely convinced you were right, what would you do?
> – How long would you be able to hold out?

41.    Is there anyone who has been told you need to learn how to say "no"?
> – Who told you that and why?

42.    Do you think it would be too difficult or too much pressure to reach a verdict that your friends or family disagreed with?
> – Would you be able to reach a verdict your friends or family disagreed with if you knew it was the right decision or would you be influenced by your friends or family's opinions?
> – What if your spouse had an opinion about this case and your verdict was just the opposite, would that be a problem for you?
>> – Would you be able to agree to the verdict or would you be influenced by

7

your spouse's opinion about what the verdict should be?

43.    Have you ever been in a position of having to decide who to believe when you are told opposite stories?
  – What were the circumstances where you had to decide who to believe?
  – How did you make the decision?

44.    Do you consider yourself an empathetic person?
  – If so, would that make it difficult for you to decide this case?
  – Would you be able to put aside your feelings and reach a fair and impartial verdict in this case?

45.    Does anyone here feel like you would have to defend your verdict to people at work, at home, or in the community?
  – Is anyone worried about being in that situation at the end of this trial?
  – Would that affect your ability to sit as a fair and impartial juror in this case?

46.    Have any of you ever wanted a promotion or known someone who wanted a promotion and did not get it?
  – Have any of you ever had that experience yourselves?
  – How did you let your employer know that you wanted the promotion?
  – How did not getting the promotion affect you?
  – Did you think that you were discriminated against because you didn't get the promotion?

47.    How does the promotion system at your place of employment work?
  – Do you believe that the system for promotion is fair?
  – Why or why not?

48.    Has anyone ever been in a position where you had to decide or recommend who should or should not get a promotion?
  – Tell me about that.
  – How did you feel about having to make promotion decisions?
  – How did you make the decision regarding who should be promoted?
  – Were you ever wrong about someone's ability to do a new job?
  – How did that turn out?
  – Were you or your employer ever sued because of who you did or didn't promote or recommend for promotion?
  – Did anyone ever complain that they believed they weren't promoted because of discrimination?

49.    Have you ever felt you were treated badly, unfairly or possibly even harassed by a co-worker?

8

– Was the co-worker a supervisor?  A subordinate?
– How did you handle it?
– Were you able to handle it yourself, or did you ask for help?
– Was it resolved?
– Was it resolved to your satisfaction?

50.     Have you ever been in the position of having to settle a dispute or a problem between co-workers?
– Tell us about that.
– Were you able to resolve the problem?
– If so, how did you get the problem resolved?

51.     Do you think a certain amount of friction between people on the job is normal or are some people just not good for anyone to work with?
– Have you ever worked with someone who was just hard to get along with?
– Who yelled at everyone?
– What is your opinion of people like that?

52.     Have you ever worked in what you thought was a "hostile work environment"?
– What made it hostile?
– Who made it hostile (supervisor, co-workers)?
– Did you or anyone else complain about the situation?
– Did the employer have a system for making complaints?
– Was anything done to try and resolve the situation?
– Was it resolved?
– Was it resolved to your satisfaction?
– Do you believe that the employer handled the situation correctly?
    – Why or why not?

53.     Have any of you ever mistrusted your employer or fellow employees? [You don't have to tell me who or when – just the general experience.]
– What caused the mistrust?
– What did you do about it?
– What was the outcome?
– Were you satisfied with the way the situation was handled?
    – Why or why not?

54.     Raise your hand if you have ever disliked your supervisor. [You don't have to tell me who or when  just the general experience.]
– Why didn't you like your supervisor?
– How bad was the working situation?
– Were you able to work out your differences?
– What did you do?

9

55.    What does the phrase "work ethic" mean to you?
       – Describe your work ethic for me.
       – Do you believe that an employee owes some amount of honesty to his/her employer when reporting the number of hours the employee has worked?

56.    What is your impression of employees who do not follow the rules of the company?
       – Is it ever okay to not obey the rules of a company?
       – Describe for us when you believe it would be okay not to obey company rules.

57.    How many of you regularly read or subscribe to at least one magazine?
       – What magazine(s) do you regularly read or subscribe to?
       – What do you enjoy about that magazine(s)?

58.    How many of you have a bumper sticker on one of your family's cars?
       – What does each bumper sticker say?
       – Whose idea was it to put the bumper sticker on the car?

59.    Do any of you belong to any groups or organizations?
       – If so, what groups or organizations do you belong to?
       – What about the particular group or organization caused you to join?

60.    Do any of you regularly read the newspaper?
       – If you only have time to read one section of the newspaper, which section do you read?

Respectfully submitted,

Deirdre O. Dexter, Okla. Bar Ass'n #10780
Attorney in Charge
Frederic Dorwart, Okla. Bar Ass'n #2436
J. Michael Medina, Okla. Bar Ass'n #6113
Associated Counsel
124 East Fourth Street
Old City Hall
Tulsa, Oklahoma  74103
(918) 583-9922 (telephone)
(918) 584-2729 (facsimile)

– and –

10

Tom M. Kirkendall
State Bar #11517300
S.D. Tex Bar # 02287
65 Hollymead Drive
The Woodlands, TX
(281) 364-9946 (telephone)
(888) 582-0646
Associated Counsel

11

.

# EXHIBIT G
# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

PAUL N. HERRERA       *

                              *

VS.                     *   CIVIL ACTION NO. B-03-019

                              *

CACTUS DRILLING COMPANY and *
UNIT CORPORATION       *

## PLAINTIFF'S PROPOSED CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW, PAUL N. HERRERA, Plaintiff in the above-entitled and

numbered cause, and, before presentation of the Charge to the Jury, file the attached

Proposed Charge and pray that the Charge be included in the Court's Charge to the

Jury.

                         Respectfully submitted,

                        Barry R. Benton
                        284 Ebony Ave.
                        Brownsville, Texas 78520
                        Telephone (956) 546-9900
                        Facsimile (956) 546-9997
                        State Bar No. 02176500
                        Federal I.D. No. 3968
                        ATTORNEY-IN-CHARGE FOR
                        PAUL N. HERRERA, PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this _29th_ day of ~~February~~ January, 2004, a true and correct

copy of the foregoing Plaintiff's Proposed Charge was hand delivered to counsel of

record, to wit:

Ms. Deirdre O. Dexter                    *Via Hand-delivery*
Frederic Dorwart, Lawyers
One City Hall
124 E. Fourth St., Suite 100
Tulsa, Oklahoma 74103


BARRY R. BENTON


PLAINTIFF'S PROPOSED CHARGE
PAGE 2

## REQUESTED CHARGE NO.

## DEFINITION NO. 1

"PAUL N. HERRERA" means the Plaintiff, Paul N. Herrera.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.

_____
JUDGE PRESIDING

PLAINTIFF'S PROPOSED CHARGE
PAGE 3

## REQUESTED CHARGE NO.

## DEFINITION NO. 2

"CACTUS DRILLING CORPORATION" means the Defendant, Cactus Drilling Corporation.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

\_\_\_\_ included in the Court's charge.

\_\_\_\_ refused.

\_\_\_\_ modified and, as modified, included in the Court's Charge.

Signed the \_\_\_\_\_ day of _____, 2004.

_____
JUDGE PRESIDING

PLAINTIFF'S PROPOSED CHARGE
PAGE 4

## REQUESTED CHARGE NO.

## DEFINITION NO. 3

"UNIT CORPORATION" means the Defendant, Unit Corporation.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.

_____
JUDGE PRESIDING

**PLAINTIFF'S PROPOSED CHARGE**
**PAGE 5**

## REQUESTED CHARGE NO.

## DEFINITION NO. 4

"PREPONDERANCE OF THE EVIDENCE" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.


Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING


PLAINTIFF'S PROPOSED CHARGE
PAGE 6

## REQUESTED CHARGE NO.

## INSTRUCTION NO. 1

### PRELIMINARY INSTRUCTIONS

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement . Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

Alternate 1: You will need to rely on your memories.

Alternate 2: If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only a aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.] Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end

of the case.   If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the court immediately.   Hold yourself completely apart from the people involved in the case-the parties, the witnesses, the attorneys and persons associated with them.   It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.   Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial our of your presence.   I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is not time for the opening statement.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.

_____
JUDGE PRESIDING

## .**REQUESTED CHARGE NO.**

## **INSTRUCTION NO. 2**

GENERAL INSTRUCTIONS FOR CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that

PLAINTIFF'S PROPOSED CHARGE
PAGE 11

persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or so something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted

to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the court has given you about/on

your conduct during the trial.  After you have reached you unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the court orders otherwise.

PLAINTIFF'S PROPOSED CHARGE
PAGE 14

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING

.

.

## REQUESTED CHARGE NO.

## INSTRUCTION NO. 3

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING


PLAINTIFF'S PROPOSED CHARGE
PAGE 16

## REQUESTED CHARGE NO. ____

## QUESTION NO. 1

Was race a motivating factor in Cactus Drilling Company's failure to promote Paul Herrera to a tool pusher position?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

Paul Herrera may prove race was a motivating factor for his discharge by showing:

1) He applied for and was qualified for the tool pusher position;
2) He was not promoted; and
3) Either the position was filled by someone not in the protected class or he was not promoted because of his race.

In addition to the foregoing, if you determine Cactus Drilling Company's explanation for not promoting Paul Herrera to a tool pusher position is false, you may, but are not required to, conclude that Cactus Drilling Company unlawfully failed to promote Paul Herrera to a tool pusher position because of his race.

Paul Herrera as a Native-American is a member of a "protected class."

Answer:    "Yes" or "No."

Answer:    _____._____

PLAINTIFF'S PROPOSED CHARGE
PAGE 17

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified,  included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. _____

## QUESTION NO. 2

Was race a motivating factor in Cactus Drilling Company's decision to not allow Paul Herrera to continue to provide contract welding services?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

Paul Herrera may prove race was a motivating factor in Cactus Drilling Company's decision to not allow Paul Herrera to continue to provide contract welding services by showing:

1) He applied for and was qualified to provide contract welding services;
2) He was not allowed to provide contract welding services; and
3) Either the services were provided by someone not in the protected class or he was not allowed to provide contract welding services because of his race.

In addition to the foregoing, if you determine Cactus Drilling Company's decision to not allow Mr. Herrera to continue to provide contract welding services is false, you may, but are not required to, conclude that Cactus Drilling Company unlawfully decided not to allow Paul Herrera to continue to provide contract welding services because of his race.

Paul Herrera as a Native-American is a member of a "protected class."

Answer:     "Yes" or "No."

Answer:     _____

PLAINTIFF'S PROPOSED CHARGE
PAGE 19

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING

**PLAINTIFF'S PROPOSED CHARGE**
**PAGE 20**

## REQUESTED CHARGE NO.
## QUESTION NO. 3

Was Paul Herrera subjected to racial harassment by Cactus Drilling Company?

Racial harassment occurred if:

1.    Paul Herrera was subjected to racial harassment and/or other conduct of a racial nature that was unwelcome and undesirable or offensive to Paul Herrera;

2.    The harassment complained of altered a term, condition, or privilege of employment; and

3.    Cactus Drilling Company knew or should have known of the harassment and Cactus Drilling Company failed to take prompt, remedial action to climate the harassment.

Harassment alters a term, condition, or privilege of employment when a reasonable person would find that the harassment created an abusive working environment. In determining whether an abusive working environment existed, consider the following: the frequency of the conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

You are further instructed that when co-worker harassment is alleged, Plaintiff is alleged, Plaintiff must also establish that Defendant knew or should have known of the harassment and failed to take steps to stop it. When the alleged harassment involves one of Plaintiff's supervisors, the burden shifts to Defendant to establish that it (a) exercised reasonable care to prevent and correct promptly any harassing behavior and (b) Plaintiff failed to take advantage of Cactus' employment policies and the remedies contained herein.

Answer "Yes" or "No"
Answer:    _____

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified,  included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING


**PLAINTIFF'S PROPOSED CHARGE**
**PAGE 22**

## REQUESTED CHARGE NO. _____

## QUESTION NO. 4

Was Paul Herrera's filing a charge of discrimination with the Equal Employment Opportunity Commission a motivating factor in Cactus Drilling Company's alleged verbal harassment, isolation, pressure to drop the complaint and/or assignment of Paul Herrera to a drilling rig in Louisiana.

Answer: _____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

____ included in the Court's charge.

____ refused.

____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.

_____
JUDGE PRESIDING

PLAINTIFF'S PROPOSED CHARGE
PAGE 23

## REQUESTED CHARGE NO. _____

## QUESTION NO. 5

Was Paul Herrera constructively discharged by Catus Drilling Company?

You are instructed that an employee is considered to have been discharged when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

Answer: _____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO.

## QUESTION NO. 6

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Paul Herrera for his damages, if any, that resulted from such conduct?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any damages you may find.

a.    Back pay.

"Back pay" is the amount of wages and employment benefits that Paul Herrera would have earned if he had not been subjected to his employer's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits he received in the interim.

"Employment benefits" include sick-leave pay, vacation pay, profit-sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary losses incurred as a result of the loss of health, life, dental, or similar insurance coverage.

Answer:      $_____

b.    Compensatory damages.

"Compensatory damages" include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. Do not include back pay or interest in calculating compensatory damages, if any.

Answer:      $_____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO.

## QUESTION NO. 7

Do you find by clear and convincing evidence that Cactus Drilling Company engaged in the discriminatory practice that you have found in answer to Questions Nos. 1, 2, 3 and/or 4 with malice or with reckless indifference to the right of Paul Herrera to be free from such practices?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means:

(a)    A specific intent by Cactus Drilling Company to cause substantial injury to Paul Herrera; or

(b)    An act or omission by Cactus Drilling Company,

(i)    Which, when viewed objectively from the standpoint of Cactus Drilling Company at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii)    Of which Cactus Drilling Company had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer:    _____

If you answered "Yes" to Question No. 7, then answer Question No. 8. Otherwise, do not answer Question No. 8.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING


**PLAINTIFF'S PROPOSED CHARGE**
**PAGE 28**

## REQUESTED CHARGE NO.

## QUESTION NO. 8

What sum of money, if any, if paid now in cash, should be assessed against

Cactus Drilling Company and awarded to Paul Herrera as exemplary damages, if

any, for the conduct found in response to Questions Nos. 1, 2, 3 and/or 4.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to be considered in awarding exemplary damages, if any, are -

(a)     The nature of the wrong.
(b)     The character of the conduct involved.
(c)     The degree of culpability of Cactus Drilling Company.
(d)     The situation and sensibilities of the parties concerned.
(e)     The extent to which such conduct offends a public sense of justice and propriety.
(f)     The net worth of Cactus Drilling Company.

Answer in dollars and cents, if any.

Answer:     $_____

## <u>ORDER</u>

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Requested Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2004.


_____
JUDGE PRESIDING

EXHIBIT H
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                         )
                                      )
            Plaintiff,                )
                                      )      Civil Case No. B-03-019
v.                                    )
                                      )
CACTUS DRILLING COMPANY               )
and UNIT CORPORATION,                 )
                                      )
            Defendants.               )

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Defendants Cactus Drilling Company and Unit Corporation hereby submit their Proposed

Jury Instructions and request that the attached instructions be given to the jury.  Defendants

respectfully reserve the right to request permission to amend, withdraw or supplement these

proposed instructions, up to and including the conclusion of the presentation of all the evidence

at the trial, depending on the evidence presented at trial.

Respectfully submitted,

By: _____
Deirdre O. Dexter, Okla. Bar Ass'n #10780
Attorney in Charge
Frederic Dorwart, Okla. Bar Ass'n #2436
J. Michael Medina, Okla. Bar Ass'n #6113
Associated Counsel
124 East Fourth Street
Old City Hall
Tulsa, Oklahoma  74103
(918) 583-9922 (telephone)
(918) 584-2729 (facsimile)

-1-

– and –

Tom M. Kirkendall
State Bar #11517300
S.D. Tex Bar # 02287
65 Hollymead Drive
The Woodlands, TX
(281) 364-9946 (telephone)
(888) 582-0646
Associated Counsel

INSTRUCTION NO. ____

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

[Alternate 1: You will not be permitted to take notes so you will need to rely on your memories]

[Alternate 2: If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of

-3-

the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.]

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source. [In particular, do not read any newspaper account of this trial or listen to any radio or television newscast concerning it.] [Do not listen to any local radio or television newscasts until this trial is over, or read any local newspaper unless someone else first removes any possible reference to this trial.]

-4-

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

INSTRUCTION NO. ___

We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

-6-

INSTRUCTION NO. _____

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may

-7-

consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.) ]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

-8-

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

[Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

INSTRUCTION NO. ____

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

-11-

INSTRUCTION NO. _____


It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

INSTRUCTION NO. _____

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

INSTRUCTION NO. _____

It is unlawful for an employer to intentionally refuse to hire or to intentionally discharge any person or otherwise discriminate against any person with respect to compensation, tenure, conditions, or privileges of employment because of such person's race.

Plaintiff Paul Herrera claims that Defendant Cactus Drilling intentionally discriminated against him because his race. Defendant Cactus Drilling denies this charge and claims that when Plaintiff complained about his co-workers, Defendant took prompt, remedial action to address those complaints.

It is your responsibility to decide whether Plaintiff Paul Herrera has proven Plaintiff's claim of intentional discrimination by Defendant Cactus Drilling by a preponderance of the evidence.

42 U.S.C.A. § 2000e; O'Malley, Federal Jury Practice and Instruction §171.01 (5th ed. 2001)

-14-

INSTRUCTION NO. _____

Plaintiff claims that Defendant discriminated against him by refusing to promote him to a tool pusher position.

In order for Plaintiff Paul Herrera to establish his discrimination claim against Defendant Cactus Drilling based on the failure to promote, Plaintiff has the burden of proving by a preponderance of the evidence that Defendant's actions were motivated by Plaintiff's race.

Plaintiff Paul Herrera must prove that Defendant Cactus Drilling intentionally discriminated against him, that is, that Plaintiff's race must be proven to have been a motivating factor in Defendant's decision not to promote Plaintiff.

The mere fact that Plaintiff Paul Herrera is a Native American and was not promoted is not sufficient, in and of itself, to establish Plaintiff's claim under the law.

O'Malley, Federal Jury Practice and Instruction §171.20 (5th ed. 2001)

-15-

INSTRUCTION NO. _____

Plaintiff claims that Defendant discriminated against him by not allowing Plaintiff to continue welding as an independent contractor for Defendant.

In order for Plaintiff Paul Herrera to establish his discrimination claim against Defendant Cactus Drilling based on the denial of welding opportunities, Plaintiff has the burden of proving by a preponderance of the evidence that Defendant's actions were motivated by Plaintiff's race.

Plaintiff Paul Herrera must prove that Defendant Cactus Drilling intentionally discriminated against him, that is, that Plaintiff's race must be proven to have been a motivating factor in Defendant's denial of welding opportunities.

The mere fact that Plaintiff Paul Herrera is a Native American and was denied welding opportunities is not sufficient, in and of itself, to establish Plaintiff's claim under the law.

O'Malley, Federal Jury Practice and Instruction §171.20 (5th ed. 2001)

-16-

INSTRUCTION NO. _____

A Plaintiff under the Texas Human Rights Commission Act may prove discriminatory animus, either directly or indirectly, by offering evidence of remarks that are:

1.    race related;

2.    proximate in time to the employment decision at issue;

3.    made by an individual with authority over the employment decision at issue, and

4.    related to the employment decision at issue.

Comments that are vague and remote in time are insufficient to establish discrimination.

*Brown v. CSC Login, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (ADEA)(citations omitted)

-17-

INSTRUCTION NO. _____

Direct evidence includes evidence of remarks or actions that, if believed, directly prove that Plaintiff's race was a motivating factor in Defendant's adverse employment action. Stray remarks or statements of personal opinion in the workplace do not constitute direct evidence of discrimination. Statements made by persons not involved in the adverse employment decision or statements by decision makers that are unrelated to the adverse employment action do not constitute direct evidence that Plaintiff's race was a factor in the employer's action.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989); *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990); *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996)

-18-

INSTRUCTION NO. _____

Plaintiff Paul Herrera claims that Defendant Cactus Drilling discriminated against him because he opposed a practice made unlawful by the Texas Commission on Human Rights Act.

In order to prevail on this claim, Plaintiff must show all the following:

First: Plaintiff engaged in conduct protected by the Texas Commission on Human Rights Act;

Second: Plaintiff was subjected to an adverse employment action at the time, or after, the protected conduct took place; and

Third: Defendant Cactus Drilling took an adverse employment action against Plaintiff Paul Herrera because of his protected conduct.

O'Malley Federal Jury Practice and Instruction §171.25 (5th ed. 2001)

-19-

INSTRUCTION NO. _____

Plaintiff claims that while an employee of Defendant, he was subjected to a hostile work environment on account of his race. In order to establish a hostile work environment, Plaintiff must prove, by a preponderance of the evidence that:

First: Plaintiff suffered from intentional discrimination because of his race by his fellow employees consisting of racial slurs, jokes or other racially derogatory language;

Second: This alleged conduct was pervasive and severe;

Third: The harassment complained of was based on Plaintiff's race, i.e., that but for his race, Plaintiff would not have been the object of harassment;

Fourth: The harassment complained of affected a term, condition or privilege of employment, i.e., the racial harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment;

Fifth: That Defendant knew or should have known of the harassment in question and failed to take prompt remedial action.

*Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271 (5th Cir. 1987); Devitt, Federal Jury Practice and Instructions (Civil), § 140.09(B)(modified)

INSTRUCTION NO. _____


In determining whether or not a hostile work environment actually existed, you may only consider conduct that was so extreme that it amounted to a change in Plaintiff's own work environment during the relevant period.


*Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

INSTRUCTION NO. _____

In order to be actionable, a racially objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff in fact did perceive to be so. Whether an environment meets this standard depends on all the circumstances, including the following factors:

First: The frequency of the discriminatory conduct;

Second: The severity of the discriminatory conduct;

Third: Whether the conduct is physically threatening or humiliating, or a mere offensive utterance;

Fourth: Whether the conduct unreasonably interferes with an employee's work performance.

*Butler v. Ysleta Independent School District*, 161 F.3d 263 (5th Cir. 1998)

INSTRUCTION NO. _____

Plaintiff claims the racial harassment he complains about forced him to quit his job, that is, that he was constructively discharged by Defendant.

In order for Plaintiff Paul Herrera to recover on his constructive discharge claim against Defendant Cactus Drilling Company, Plaintiff must prove that Defendant intentionally discriminated against him. Plaintiff must prove that:

First: Defendant Cactus Drilling Company intentionally made Plaintiff's working conditions so intolerable that a reasonable person would feel forced to resign;

Second: Plaintiff's race was a motivating factor in Defendant's conduct, and

Third: Plaintiff Paul Herrera resigned from his position.

To establish constructive discharge requires a greater severity or pervasiveness of harassment than what is required to prove a hostile work environment.

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1989); *Hockman v. Westward Communications, Inc.*, 282 F.Supp.2d 512 (E.D. Tex. 2003); O'Malley, Federal Jury Practice and Instruction §171.20 (5th ed. 2001) (modified)

-23-

INSTRUCTION NO. _____

Proof of the following facts will suffice to establish the exercise of "reasonable care" by Defendant Cactus Drilling, the employer:

First: Defendant Cactus Drilling Company employer had promulgated an explicit policy against harassment in the workplace;

Second: That policy was fully communicated to its employees; and

Third: That policy provided a reasonable avenue for Plaintiff Paul Herrera to make a complaint to higher management.

On the other hand, proof that Plaintiff Paul Herrera did not follow a complaint procedure provided by Defendant Cactus Drilling Company will ordinarily be enough to establish that Plaintiff Paul Herrera "unreasonably failed" to take advantage of a corrective opportunity.

O'Malley, Federal Jury Practice and Instruction §171.41 (5th ed. 2001)

-24-

INSTRUCTION NO. _____

The term "motivating factor" means a consideration that moved Defendant Cactus Drilling Company toward its decision.

O'Malley, Federal Jury Practice and Instruction §171.42 (5th ed. 2001)

-25-

INSTRUCTION NO. _____

A "tangible employment action" is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

O'Malley, Federal Jury Practice and Instruction §171.43 (5th ed. 2001)

-26-

INSTRUCTION NO. _____

A "supervisor" is a person with immediate or successively higher authority over the employee. The essence of supervisory status is the authority to affect terms and conditions of employment, primarily consisting of the power to hire, fire, demote, promote, transfer, or discipline employee.

O'Malley, Federal Jury Practice and Instruction §171.44 (5th ed. 2001)

INSTRUCTION NO. _____

In determining whether a hostile work environment existed, you must consider the evidence from the perspective of a reasonable person. This is an objective standard and requires you to look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Instead, you must consider the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological well-being of a reasonable person.

O'Malley, Federal Jury Practice and Instruction §171.45 (5th ed. 2001)

-28-

INSTRUCTION NO. _____

Plaintiff Paul Herrera has the burden of proving each and every element of his claims by a preponderance of the evidence. If you find that Plaintiff Paul Herrera has not proved any one of the elements by a preponderance of the evidence, you must return a verdict for Defendant Cactus Drilling Company.

Defendant Cactus Drilling Company has the burden of proving each element of Defendant's affirmative defenses by a preponderance of the evidence.

O'Malley, Federal Jury Practice and Instruction §171.60 (5th ed. 2001)

-29-

INSTRUCTION NO. _____
INSTRUCTION NO. _____

If, after considering Plaintiff's evidence and Defendant's rebuttal of that evidence, you find Plaintiff Paul Herrera has established each and every element of his claim, only then should you concern yourselves with the defenses offered by Defendant Cactus Drilling.

With regard to any of Defendant's defenses, remember that Plaintiff Paul Herrera must disprove the defense by a preponderance of the evidence. In other words, Defendant Cactus Drilling Company establishes the defense unless you find the evidence that opposes the existence of that defense has more convincing force to you than the evidence that supports it.

If you find Plaintiff Paul Herrera has successfully rebutted the defense, then you must find for Plaintiff Paul Herrera. If you find Defendant Cactus Drilling Company has established its defense, then you must find for Defendant Cactus Drilling Company.

O'Malley, Federal Jury Practice and Instruction §171.70 (5th ed. 2001)

-30-

INSTRUCTION NO. _____

You must find for Defendant Cactus Drilling Company if you find Defendant Cactus Drilling has proved by a preponderance of the evidence:

First: That Defendant Cactus Drilling exercised reasonable care to prevent and correct promptly any racially harassing behavior and

Second: That Plaintiff Paul Herrera unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant Cactus Drilling Company or to avoid harm otherwise.

O'Malley, Federal Jury Practice and Instruction §171.74 (5th ed. 2001)

INSTRUCTION NO. _____

Even if an employer is mistaken and its business judgment is wrong, an employer is entitled to make its own policy and business judgment. An employer may make those employment decisions as it sees fit, as long as it is not unlawful.

In determining whether Defendant's stated reason for its actions was a pretext for discrimination, you may not question Defendant's business judgment. Pretext is not established just because you disagree with the business judgment of Defendant Cactus Drilling Company, unless you find that Defendant's reason was a pretext for discrimination.

O'Malley, Federal Jury Practice and Instruction §171.75 (5th ed. 2001)

-32-

INSTRUCTION NO. _____

You must also consider any legitimate, nondiscriminatory reason or explanation stated by Defendant Cactus Drilling Company for its decision. If you determine that Defendant Cactus Drilling Company has stated such a reason, then you must decide in favor of Defendant Cactus Drilling Company unless Plaintiff Paul Herrera proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's discriminating against Plaintiff Paul Herrera because of his race.

O'Malley, Federal Jury Practice and Instruction §171.77 (5th ed. 2001); Wal-Mart Stores, Inc. V. Canchola, 121 S.W.3d 735, 2003 WL 22053417 (Tex. 2003)

INSTRUCTION NO. ____


If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.


United States Court of Appeals; Fifth Judicial Circuit Pattern Jury Instructions 1999 (Civil Cases)

INSTRUCTION NO. _____

If you find Defendant Cactus Drilling Company discriminated against Plaintiff Paul Herrera based on Plaintiff's race, then you must determine an amount that is fair compensation for Plaintiff's damages. You may award compensatory damages only for injuries that Plaintiff Paul Herrera proves were caused by Defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation – no more and no less.

You may award damages for any pain, suffering or mental anguish that Plaintiff Paul Herrera experienced as a consequence of Defendant's allegedly unlawful act. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that Plaintiff Paul Herrera prove the amount of Plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

O'Malley, Federal Jury Practice and Instruction §171.90 (5th ed. 2001)

INSTRUCTION NO. _____

Plaintiff Paul Herrera claims the acts of Defendant Cactus Drilling Company were done with malice or reckless indifference to the Plaintiff's state protected rights so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages.

In some cases punitive damages may be awarded for the purpose of punishing a Defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

An award of punitive damages would be appropriate in this case only if you find for Plaintiff Paul Herrera and then further find from a preponderance of the evidence:

First: That a higher management official of Defendant Cactus Drilling Company personally acted with malice or reckless indifference to Plaintiff's state protected rights, and

Second: That Defendant Cactus Drilling Company itself had not acted in good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

If you find that punitive damages should be assessed against Defendant Cactus Drilling Company, you may consider the financial resources of Defendant Cactus Drilling in fixing the amount of such damages.

Punitive damages must bear a reasonable relationship to Plaintiff's actual injury.

-36-

However, there is no simple method to link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors. These include:

1.   The impact or severity of Defendant's conduct.

2.   The amount of time Defendant Cactus Drilling Company conducted itself in this manner.

3.   The amount of compensatory damages.

4.   The attitudes and actions of Defendant's top management after the misconduct was discovered.

5.   The effect of the damages award on Defendant's financial condition.

O'Malley, Federal Jury Practice and Instruction §171.94 (5th ed. 2001)

-37-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                )
                             )
              Plaintiff,     )
                             )        Civil Case No. B-03-019
v.                           )
                             )
CACTUS DRILLING COMPANY      )
and UNIT CORPORATION,        )
                             )
              Defendants.    )

VERDICT FORM
(Race Discrimination Claim)

 We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find the issues as follows:

1. Has Plaintiff proven by a preponderance of the evidence that Defendant Cactus Drilling Company did not promote Plaintiff to the position of tool pusher because of his race?

    YES _____    NO _____

2. Has Plaintiff proven by a preponderance of the evidence that Defendant Cactus Drilling Company stopped permitting Plaintiff to provide welding services to Cactus because of his race?

    YES _____    NO _____

 (If you answered "NO" to Questions 1 and 2, the Foreperson should sign and date the Verdict Form. Your deliberations are finished. If you answered "YES" to Question 1 or 2, then you must answer Questions 3 and 4)

3. State the amount of compensatory damages that should be awarded based on the discriminatory failure to promote Plaintiff, including damages for pain, suffering, inconvenience, mental anguish or loss of enjoyment of life caused by Defendant Cactus Drilling Company's discriminatory failure to promote Plaintiff to the position of tool pusher:

    $_____

4.     State the amount of compensatory damages that should be awarded based on the discriminatory refusal to allow Plaintiff to continue welding, including damages for pain, suffering, inconvenience, mental anguish or loss of enjoyment of life caused by Defendant Cactus Drilling Company's discriminatory failure to allow Plaintiff to continue to provide welding services to Defendant:

$_____

_____
FOREPERSON

DATED: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                     )
                                  )
            Plaintiff,            )
                                  )      Civil Case No. B-03-019
v.                                )
                                  )
CACTUS DRILLING COMPANY           )
and UNIT CORPORATION,             )
                                  )
            Defendants.           )


<u>VERDICT FORM</u>
(Hostile Work Environment Claim)

We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find the issues as follows:

1.    Has Plaintiff proven by a preponderance of the evidence that he was subjected to a hostile work environment, on account of his race, for which Defendant is responsible?

            YES _____            NO _____

2.    Has Plaintiff proven by a preponderance of the evidence that such hostile work environment was created or permitted by a supervisor with immediate or successively higher authority over Plaintiff?

            YES _____            NO _____

3.    Has Plaintiff proven by a preponderance of the evidence that he suffered damages as a proximate or legal result of such hostile work environment?

            YES _____            NO _____


(If you answered "NO" to Question 1, 2, or 3, the Foreperson should sign and date the Verdict Form.  Your deliberations are finished.  If you answered "YES" to Question 1, 2, or then you must answer Questions _____.)

4.   Has Defendant Cactus Drilling Company proven by a preponderance of the evidence that it exercised reasonable care to prevent and correct promptly any racially harassing behavior in the workplace?

YES _____          NO _____

5.   Has Defendant Cactus Drilling Company proven by a preponderance of the evidence that Plaintiff Paul Herrera failed to take advantage of any preventive or corrective opportunities provided by Defendant to avoid or correct the harm?

YES _____          NO _____

6.   Has Defendant Cactus Drilling Company proven by a preponderance of the evidence that it exercised reasonable care to prevent any racially harassing behavior in the workplace?

YES _____          NO _____

7.   Has Defendant Cactus Drilling Company proven by a preponderance of the evidence that it took reasonable and prompt corrective action after Plaintiff Paul Herrera took advantage of the preventive or corrective opportunities provided by Defendant?

YES _____          NO _____

(If you answered "YES" to Question 4, 5, 6, or 7, the Foreperson should sign and date the Verdict Form.  Your deliberations are finished.  If you answered "NO" to Question 4, 5, 6, or 7 then you must answer Question 8.)

8.   State the amount of compensatory damages that should be awarded based on the hostile work environment to which Plaintiff was subjected, including damages for pain, suffering, inconvenience, mental anguish or loss of enjoyment of life caused by the hostile environment:

$_____

_____
FOREPERSON

DATED: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,                          )
                                       )
          Plaintiff,                   )
                                       )        Civil Case No. B-03-019
v.                                     )
                                       )
CACTUS DRILLING COMPANY                )
and UNIT CORPORATION,                  )
                                       )
          Defendants.                  )

### VERDICT FORM
(Retaliation Claim)

We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find the issues as follows:

1.    Has Plaintiff proven by a preponderance of the evidence that he was subjected to an adverse employment action because he engaged in conduct protected by the Texas Commission on Human Rights Act?

              YES _____                    NO _____

      (If you answered "NO" to Question 1, the Foreperson should sign and date the Verdict Form.   Your deliberations are finished.   If you answered "YES" to Question 1, then you must answer Question 2.)

3.    State the amount of compensatory damages that should be awarded based on the adverse employment action to which Plaintiff was subjected, including damages for pain, suffering, inconvenience, mental anguish or loss of enjoyment of life caused by the hostile environment:

                        $_____


                                    _____
                                    FOREPERSON


DATED: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL HERRERA,          )
                              )
          Plaintiff,      )
                              )     Civil Case No. B-03-019
v.                          )
                              )
CACTUS DRILLING COMPANY  )
and UNIT CORPORATION,     )
                              )
          Defendants.     )

## VERDICT FORM
(Constructive Discharge Claim)

We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find the issues as follows:

1. Has Plaintiff proven by a preponderance of the evidence that Defendant Cactus Drilling Company intentionally made Plaintiff's working conditions so intolerable that a reasonable person would feel forced to resign?

          YES _____          NO _____

2. Has Plaintiff proven by a preponderance of the evidence that Plaintiff's race was a motivating factor in Defendant's conduct?

          YES _____          NO _____

3. Has Plaintiff proven by a preponderance of the evidence that Plaintiff felt compelled to resign from his position because his working conditions were intolerable?

          YES _____          NO _____

(If you answered "NO" to Questions 1, 2, or 3, the Foreperson should sign and date the Verdict Form. Your deliberations are finished. If you answered "YES" to Questions 1, 2, and 3 then you must answer Question 4.)

4.     State the amount of compensatory damages that should be awarded based on Plaintiff's constructive discharge, including damages for pain, suffering, inconvenience, mental anguish or loss of enjoyment of life caused by the hostile environment:

$_____

_____
FOREPERSON

DATED:     _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PAUL HERRERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. B-03-019 |
| v. | ) | |
| | ) | |
| CACTUS DRILLING COMPANY | ) | |
| and UNIT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## VERDICT FORM
(Punitive Damages)

1. Has Plaintiff proved by a preponderance of the evidence that a higher management official acted with malice or reckless indifference to the Plaintiff's state-protected rights?

    YES _____         NO _____

2. If your answer to No. 1 is "YES," do you find by a preponderance of the evidence that Defendant Cactus Drilling Company did not act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace?

    YES _____         NO _____

3. If your answer to No. 2 is "YES," state the amount of punitive damages, if any, that should be awarded to Plaintiff:

    $_____

    _____
    FOREPERSON

DATED: _____